**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Leonard Edward JOHNSON,
Defendant-Appellant.**

**No. 76–2105
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Nov. 5, 1976.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

James A. McPherson, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Appellant Leonard Edward Johnson was convicted in federal district court of violating 18 U.S.C. § 111[1] by pointing a Luger

---

1. 18 U.S.C. § 111 provides that

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined

pistol at two FBI agents in an effort to escape them. Johnson asserts that the judgment should be reversed for three reasons: (1) the district court should have granted his motion for judgment of acquittal because he had a legal excuse for his conduct, (2) the district court's instructions to the jury on intent failed to put the legal excuse theory before the jury, and (3) the government acted improperly in eliciting evidence of Johnson's criminal record and of an outstanding warrant for his arrest. We reject all of these contentions and affirm his conviction.

## I. The Factual Setting.

Johnson's present troubles began on Frenchman Street in New Orleans in early December, 1975. Taking the view most favorable to the government, the jury reasonably could have concluded[2] that events unfolded as follows. Two FBI agents driving to the scene of a bank robbery heard a lookout describing the bandits as two black males and a third person who appeared to be a black female. The lookout over the FBI radio reported that the robbers were believed to have used Frenchman Street as their escape route. The agents decided to patrol Frenchman Street. Appellant and two other persons were congregated by a parked car on Frenchman Street as the agents passed, and the three fit the general description given of the robbers. One of the three gave the FBI car a hard stare as it went by. Given all these circumstances, the agents decided to approach the trio and ask a few questions, but by the time the agents had doubled back, the three persons and the parked car were gone.

The agents spotted the car on a side street. When they approached, the car turned and started down yet another street, and the agents decided to pull it over, so they switched on their flashing red light and siren. The vehicle pulled to the side of the road, but just as the agents were about to approach on foot, the car sped away. A chase ensued which ended in a minor collision. Appellant jumped out of the pursued car with gun in hand. He pointed it at one of the agents, who fired his own weapon. Johnson pointed the gun again, and again the agents fired, wounding appellant, who fled, but later was arrested by city police.

## II. Motion for Judgment of Acquittal.

As we understand his position, Johnson contends that he was entitled to acquittal as a matter of law because the government failed to show the requisite *mens rea* for the section 111 offense. Johnson's analysis is quite obscure, but we take it to be as follows. First, Johnson reasonably believed that the FBI agents were state officers. Second, Louisiana law allows a citizen to resist unlawful conduct of police. Third, the action of the FBI agents was in fact unlawful in that the agents lacked the reasonable suspicion mandated by the fourth amendment as a prerequisite for the stopping of a vehicle.[3]

Whether one views Johnson's theory as attacking the existence of *mens rea* or as suggesting a justification or excuse for otherwise criminal conduct,[4] the theory

not more than $5,000 or imprisoned not more than three years, or both.

Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Jones v. United States*, 391 F.2d 273 (5th Cir. 1968); *Lambert v. United States*, 261 F.2d 799 (5th Cir. 1958).

3. We intimate no view on the correctness of the three elements of Johnson's contention. For the purpose of our discussion, we treat them as accurate factually and legally. Also, we doubt seriously that Johnson asserted his

theory clearly enough at trial to put it in issue. Nevertheless, we deal with it.

4. Since, as the jury found, Johnson intended to resist the FBI agents and intended to use a deadly weapon in furtherance of that resistance, we cannot conceive how a reasonable belief in the lawfulness of his conduct would negate the *mens rea* required under section 111. Rather, we view the contention as an effort to construct an excuse or justification for conduct otherwise criminal. *See* W. LaFave & A. Scott, Criminal Law § 8, at 46–47 (1972). We recognize that circumstances can exist in which the accused reasonably believes he is resisting private individuals who mean to harm

must be rejected because it is founded upon an intolerable premise, namely, that an accused is justified in threatening deadly force to oppose federal officers if it later turns out that the officers lacked reasonable suspicion for their stopping of the accused's vehicle. While a rule of that sort might have been an essential counterweight to oppressive authority in an earlier day,[5] our civilized society could not abide it. We do not need citizen avengers who are authorized to respond to unlawful police conduct by gunning down the offending officers. Other remedies are available for those police actions that are based on unreasonable suspicions or technically defective warrants. Thus we hold that the mere invalidity of a law officer's conduct under the fourth amendment, without more, can never justify the threat of deadly force in opposing the officer.[6]

In a case decided in 1931, *Brown v. United States*, 47 F.2d 681 (5th Cir.), this court held that the use of a deadly weapon to resist a federal officer would be justified if "the desperate and dangerous struggle" had followed upon an attempt to search the accused's vehicle without a warrant and without probable cause. The *Brown* court decided that the existence of probable cause for the warrantless search would be a question for the jury. The *Brown* decision has not been followed in this Circuit, and the rule upon which it rests has been discredited by the modern decisions of other Circuits. We think *Brown* has been sapped of its precedential value and that it does not bind us to a result different from the one we reach today. *See United States v. Cunningham*, 166 U.S.App.D.C. 206, 509 F.2d 961 (1975); *United States v. Martinez*, 465 F.2d 79 (2d Cir. 1972); *United States v. Beyer*, 426 F.2d 773 (2d Cir. 1970); *United States v. Cho Po Sun*, 409 F.2d 489 (2d Cir.), *cert. denied*, 396 U.S. 864, 90 S.Ct. 140, 24 L.Ed.2d 118 (1969); *United States v. Simon*, 409 F.2d 474 (7th Cir.), *cert. denied*, 396 U.S. 829, 90 S.Ct. 79, 24 L.Ed.2d 79 (1969); *United States v. Heliczer*, 373 F.2d 241 (2d Cir.), *cert. denied*, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967); *Hodgdon v. United States*, 365 F.2d 679, 685 (8th Cir. 1966), *cert. denied*, 385 U.S. 1029, 87 S.Ct. 759, 17 L.Ed.2d 676 (1967); *cf. Arwood v. United States*, 134 F.2d 1007 (6th Cir.), *cert. denied*, 319 U.S. 776, 63 S.Ct. 1436, 87 L.Ed. 1722 (1943).

Since Johnson's theory of legal excuse for his conduct is insufficient as a matter of law, the trial court committed no reversible error in failing to instruct the jury regarding the theory.[7]

him, and that courts have spoken of this as negating the *mens rea* required for this offense. *See United States v. Feola*, 420 U.S. 671, 686, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); *United States v. Perkins*, 488 F.2d 652, 654–55 (1st Cir. 1973), *cert. denied*, 417 U.S. 913, 94 S.Ct. 2612, 41 L.Ed.2d 217 (1974); *United States v. Young*, 464 F.2d 160, 164 n. 6 (5th Cir. 1972). We find this analysis difficult to square with the proposition that one need not be aware of the official status of his victim in order to be convicted of violating section 111. *See United States v. Feola supra*. The situation is more logically categorized as excuse or justification for conduct otherwise criminal.

At any rate, the distinction seems only theoretical, since the defendant will almost always have to come forward with evidence putting his excuse in issue in order to trigger the government's burden of proving the absence of justification beyond a reasonable doubt. *See United States v. Young supra; United States v. Ulan*, 421 F.2d 787, 790 (2d Cir. 1970).

Moreover, as our opinion today makes clear, some asserted excuses are deficient as a matter

of law, and thus cannot be said either to negate *mens rea* or to serve as justification for conduct otherwise criminal.

5. *See generally* Chevigney, *The Right to Resist an Unlawful Arrest*, 78 Yale L.J. 1128 (1969).

6. Of course, we do not hold that one's resistance to unlawful police conduct is always felonious, no matter how outrageous the police conduct and no matter what the degree of resistance. Since we have before us only a case involving the threat of deadly force coupled with an allegation that the officers' conduct was not grounded in reasonable suspicion, we do not attempt to decide any other case.

7. Johnson asserts one other ground in support of his position regarding the motion for judgment of acquittal. He argues that the bullet holes in his body are positioned in such a way to prove conclusively that he was not pointing his gun at the agents when they fired at him. We reject this contention.

## III. Other Crimes Testimony.

 Appellant Johnson took the stand in his own behalf and, during the course of cross-examination, the government's counsel elicited testimony from Johnson regarding his criminal record and an outstanding warrant for his arrest. Johnson asserts that it was reversible error for the district court to allow this line of questioning.[8]

 The Federal Rules of Evidence allow evidence of other crimes to prove motive.[9] In its brief the government argues that the felony conviction and the existence of the arrest warrant were necessary to show Johnson's motive for resisting the officers, the theory being that, under the circumstances, Johnson could not afford to be caught with a gun in his possession. This is an acceptable use of such evidence.[10] *See United States v. Parten,* 462 F.2d 430 (5th Cir. 1972).

 The district court apparently took the position that the evidence was admissible to impeach the testimony of Johnson. We think the district court's ruling was correct. The government elicited the evidence regarding the conviction and the arrest warrant only after the following exchange between Johnson and counsel for the government:

Q: I want to tell the Jury why it would be bad for them to catch you, sir.

A: Because it's not exactly legal to have a weapon in my possession.

Q: Why you, sir?

A: Anyone, really. I'm not authorized to carry a weapon. I'm not a law enforcement agent. I'm not military personnel.

Q: Is there any other reason, Mr. Johnson?

A: Not that I can think of right now, no.

Q: You are not aware of any other reason that would prevent you, Leonard Johnson, from carrying a gun as opposed to Mr. McPherson or anyone else?

A: I maintain my answer, no.[11]

It seems clear that Johnson's subsequent admissions regarding his less than amiable relations with the law were inconsistent with the position taken in the quoted testimony.

 Johnson contends, however, that at least with respect to his 1958 felony conviction, the impeachment use of the evidence was barred by Rule 609(b) of the Federal Rules of Evidence, which creates in effect a rebuttable presumption that convictions over ten years old are more prejudicial than helpful and should be excluded. We do not believe Rule 609 was meant to cover this particular species of impeachment use of a prior conviction. Rule 609

---

8. Appellant's manner of preserving the point for appeal was irregular. No objection was ever made on the record. Instead, the objection was made and overruled in chambers with the court reporter absent. Later, the trial judge put into the record his recollection of the objection and his reason for overruling it.

Because appellant failed in his obligation to make the record for appeal, he came dangerously close to losing his chance to argue to us his evidentiary point. Had appellant gone by the book, we would have had before us four items: (1) the original objection, (2) the government's response attempting to bring the elicited testimony within one or more of the exceptions to the bar against "other crimes" evidence, (3) the appellant's response to the government's position, and (4) the trial judge's ruling based on the arguments of both sides.

Here we have only a general objection as restated by the trial judge and his decision to overrule based on the impeachment exception to the general rule of exclusion.

If it is necessary to hear an objection outside the presence of the jury, this can be done without depriving this court of a record upon which to base its holding.

9. Fed.R.Ev. 404(b).

10. The evidence was not elicited to prove intent. It was not elicited to show a pattern or practice of resisting federal officers. The evidence was elicited to show Johnson had a strong interest in avoiding the FBI agents' clutches. Thus no showing of similarity of the other crimes to the one for which Johnson was standing trial was necessary. *Cf. United States v. Broadway,* 477 F.2d 991 (5th Cir. 1973).

11. Record at 106.

**235**

was crafted to apply in those cases where the conviction is offered only on the theory that people who do certain bad things are not to be trusted to tell the truth.[12] Here the evidence had a different, surer value in that it directly contradicted the position taken by the witness.[13]

AFFIRMED.

12. *See* Fed.R.Ev., Notes of Advisory Committee on Proposed Rules.

13. In some situations, despite the relevance of the prior conviction for showing motive or for impeachment, the value may be outweighed by prejudice to the defendant. In such cases, the trial court should exclude this evidence. *Cf.* Fed.R.Ev. 609.