**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Landis Cuber DOTHARD,
Defendant-Appellant.**

No. 80–9075.

United States Court of Appeals,
Eleventh Circuit.

Jan. 22, 1982.

Michael E. McMaken, Mobile, Ala. (Court-appointed), for defendant-appellant.

W. A. Kimbrough, Jr., U. S. Atty., Thomas H. Figures, Asst. U. S. Atty., Mobile, Ala., for plaintiff-appellee.

Before TUTTLE, HENDERSON and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

This appeal requires an examination of the trial court's application of the rules governing the admissibility of extrinsic evidence. Finding that certain extrinsic evidence was improperly admitted, we reverse.

## FACTS

In March, 1977, appellant Landis Cuber Dothard applied to enlist in the United States Army Reserves at the Alabama National Guard Armory in Butler, Alabama. Item forty on the application for enlistment contained a set of seven questions inquiring whether the applicant had ever been the subject of any arrests, convictions, sentences, or other prior involvement with law enforcement authorities. These blocks on Dothard's form were marked by an "x" in the box indicating "No." In fact, Dothard was convicted in 1976 for making a false statement to the Veterans' Administration (VA) and was still on probation at the time of his enlistment application. The form warned that the answers would be verified with the Federal Bureau of Investigation and other agencies and that knowing false or incorrect information would subject the applicant to a possibility of prosecution and military discharge. Item forty-two also contained a certification from the applicant that the armed forces could rely on the information therein and that the information given was "true, complete, and correct

to the best of [the applicant's] knowledge and belief." Dothard signed the application directly below this certification in the presence of Henry Curtis, recruitment officer for reserve applicants.

Dothard subsequently was indicted for knowingly and willfully making a false, fictitious and fraudulent statement with respect to a material fact, to a United States agency in violation of 18 U.S.C. § 1001. The indictment alleged that he falsely denied in the enlistment application that he had been convicted of a prior criminal offense.

In defense, Dothard sought to establish lack of intent by denying that he made or that he instructed the enlistment officer to enter the check marks in the "No" box in item forty. Dothard testified that he was unaware of the presence of items forty and forty-two on the application because the document was neither read to or by him. Rather, he acknowledged that after taking a three and one-half to four hour test given by Curtis, he signed his name to five or six blank papers so that he "could get away from the armory." Dothard stated that Curtis asked, "You never killed anybody, have you?", to which Dothard replied "No." Dothard claimed Curtis then said, "Sign the papers here" and that he would fill them in later. Dothard admitted his prior conviction and the fact that he was on probation in 1977 as well as at the time of this trial.

The prosecutor introduced into evidence prior instances of Dothard's misconduct which tended to show his intent and his "method of operation" or "pattern or practice" in making the incorrect statements on his enlistment application.

Upon conviction, Dothard's probation in connection with the prior conviction was revoked, and he was ordered to serve the remaining twenty-two months of that sentence concurrently with the three-year sentence imposed in this case.

Dothard raises four points on this appeal. He contends that the trial court erred in admitting evidence of unrelated extrinsic offenses to prove that he committed the

crime with which he is presently charged because the "other acts" were irrelevant to any issue other than his character and were unduly prejudicial. He further argues that no sufficient evidence existed to establish whether he even committed the extrinsic acts.

Dothard also asserts that the trial court abused its discretion by permitting the prosecution to exceed the allowable scope of cross-examination and to inquire into extrinsic matters which the government failed to disclose to the defense in violation of Fed.R.Crim.P. 16(c) and the agreement for complete and continuing discovery. Additionally, Dothard argues that the trial court erred in failing to grant defendant's motion for judgment of acquittal because of insufficient evidence of intent. Finally, Dothard argues that the trial court committed reversible error in instructing the jury on the reasonable doubt standard and in refusing a requested charge on burden of proof. The government denies any grounds exist for reversing the conviction.

## ISSUES

We are requested to determine whether the trial court erred (1) in admitting evidence of defendant's extrinsic acts on the issues of his specific intent and intent to deceive or mislead as well as on the issue of his "method of operation," (2) in admitting certain rebuttal testimony as beyond the permissible scope of cross-examination, (3) in denying appellant's motion for acquittal, and (4) in refusing to submit appellant's requested charge on burden of proof to the jury.

I. *Admission of Extrinsic Act Evidence*

■  The trial court is afforded broad discretion in passing on the admissibility of evidence, and its determination will not be disturbed absent a clear showing of abuse. *United States v. Diecidue*, 603 F.2d 535, 551 (1979), *cert. denied*, 446 U.S. 912, 100 S.Ct. 1842, 64 L.Ed.2d 266 (1980). Evidence of extrinsic offenses is inadmissible solely to demonstrate the criminal disposition of an accused to support the inference that he committed the crime with which he is charged. *Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948). "Other act" evidence is admissible, however, in limited circumstances as set forth in Rule 404(b) of the Federal Rules of Evidence, which provides in pertinent part:

> *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■  The prerequisites to the admissibility of extrinsic act evidence under rule 404(b) calls for a two-step analysis: (1) the extrinsic act evidence must be relevant to an issue other than the defendant's character, and (2) the evidence must possess probative value that is not substantially outweighed by the danger it presents of "unfair prejudice, confusion of the issues, or misleading the jury, by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Guerrero*, 650 F.2d 728, 733 (5th Cir. 1981), (citing United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979)); *see* Fed.R.Evid. 403 [1] (exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time).

■  The test for relevancy under the first step of the *Beechum* analysis is governed by Fed.R.Evid. 401 under which the evidence sought to be admitted must tend to make the existence of some fact to be proved more or less probable than it would be without the evidence. *Beechum*, 582 F.2d at 911; Fed.R.Evid. 401. The relevan-

---

**1.** Fed.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

cy of extrinsic evidence under *Beechum* is a function of the degree of similarity between the extrinsic act and the offense charged. In this regard, the extrinsic and the charged offense must have more than a mere characteristic in common; the common characteristic must be "the significant one for the purpose of the inquiry at hand." 582 F.2d at 911. Thus, where the issue for which the extrinsic evidence is admitted is the defendant's intent to commit the offense charged, the relevancy of the "other act" evidence derives from the defendant's having possessed the same state of mind in the commission of both the extrinsic act and the charged offense. *Guerrero*, 650 F.2d at 733; *Beechum*, 582 F.2d at 911.

■■■ Where, however, extrinsic acts are admitted to show a common plan, scheme, or design, the meaning and nature of the "similarity" requirement is different. In this context, evidence of the "other act" is admissible only if it is "so linked together in point of time and circumstances with the crime charged that one cannot be shown without proving the other." *Beechum*, 582 F.2d at 912 n.15; *United States v. Broadway*, 477 F.2d 991 (5th Cir. 1973). Courts have admitted extrinsic act evidence to show a defendant's design or plan to commit *the specific* crime charged, but never to show a design or plan to commit "*crimes of the sort* with which he is charged." *United States v. Goodwin*, 492 F.2d 1141, 1153 (5th Cir. 1974) (emphasis in original). Thus, proof of design or plan by showing the commission of similar acts requires more than

> merely a similarity in the results, but *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.* Thus, where the act of passing counterfeit money is conceded, and the intent alone is an issue, the fact of two previous utterings in the same month

might well tend to negative intent; but where the very act of uttering is disputed —as, where the defendant claims that his identity has been mistaken—and the object is to show that he had a general system or plan of working off a quantity of counterfeit money and did carry it out in this instance, the fact of two previous utterings may be in itself of trifling and inadequate significance.

*Goodwin*, 492 F.2d at 1153 (quoting 2 J. Wigmore, Evidence § 304, at 202–03) (emphasis in original).

■■■ As a predicate to the introduction of extrinsic act evidence, the government must first prove that the defendant actually committed the offense. *Guerrero*, 650 F.2d at 733; *United States v. Jimenez*, 613 F.2d 1373, 1376 (5th Cir. 1980), (citing United States v. Beechum, 582 F.2d 898, 912–13 (5th Cir. 1978)). Fed.R.Evid. 104(b)[2] sets forth the standard governing this threshold requirement: the question of whether a defendant actually committed a prior extrinsic act is a jury question, unless the court is convinced that the jury could not reasonably find that the defendant committed the alleged prior act. *Guerrero*, 650 F.2d at 734; *United States v. Byers*, 600 F.2d 1130, 1132 (5th Cir. 1979); *Beechum*, 582 F.2d at 913, (quoting 21 Wright and Graham, Federal Practice and Procedure: Evidence § 5054, at 269 (1977)).

■■■ Once a court determines that a jury could find that the defendant committed the extrinsic act and that the extrinsic act is sufficiently similar to the charged offense to be relevant to an issue other than the defendant's character, the evidence satisfies the first step under rule 404(b). Under the second prong of the *Beechum* test, the court must then balance the probative value of the extrinsic act evidence against its potential for undue prejudice. *Beechum*, 582 F.2d at 913. This determination lies within the sound discretion of the trial court and calls for a "commonsense assess-

---

2. Fed.R.Evid. 104(b) provides:

*Relevancy conditioned on fact.* When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

ment of all the circumstances surrounding the extrinsic offense," including prosecutorial need, the overall similarity between the extrinsic act and the charged offense, and the temporal proximity of the two. 582 F.2d at 914, 915.

In this case, the government questioned Dothard about prior extrinsic acts on the theory that they related to his intent and his "method of operation" or "pattern or practice." These "other acts" included (a) an application for an Alabama driver's license in December, 1976; (b) a visit from his probation officer in December, 1979; (c) Dothard's "failure to report" his enlistment to his probation officer; and (d) his failure to apply his Guard pay to the repayment of monies he was required to make pursuant to his 1976 conviction.

### A. Trooper Nichols's Testimony

■ Proof that the defendant has the specific intent to deceive by making a false or fraudulent statement is a prerequisite to a conviction under 18 U.S.C. § 1001. *United States v. Lange*, 528 F.2d 1280, 1286 (5th Cir. 1976). In seeking to establish Dothard's intent to deceive or mislead, the prosecutor questioned Dothard about a purported false statement he made to an Alabama driver's license examiner some four years ago concerning his employment. Although Dothard denied telling the examiner, state trooper Willie Nichols, that he was a VA counselor, Dothard admitted that, in response to the examiner's request for identification, he produced an identification card which showed that he was a New York VA investigator.

The prosecutor attempted to elicit testimony from Nichols that Dothard had lied in stating that he was a VA investigator. The trial court stated that Nichols could testify regarding the implication of receiving the identification card and the impression this left with the examiner. Nichols subsequently testified that when he questioned the defendant about his occupation, Dothard stated that he was a VA investigator, but it was later determined that Dothard was unemployed. On cross-examination, Nichols was unable to state exactly what

was said, and no record was made of the conversation which occurred almost four years earlier.

■ Applying the above standards to this case, we conclude that the trial court improperly admitted trooper Nichols's testimony. Although the trial court's statement indicated a belief that Dothard made no actual mention of his employment, Nichols's and Dothard's testimony created a jury issue on this question. Nevertheless, we conclude that the first step of the *Beechum* test was not satisfied as to this evidence. Because Dothard's conduct in presenting his VA identification card was sufficiently ambiguous under the evidence presented, we are unable to say that he possessed the same state of mind, that is, knowingly and willingly making a false statement with the intent to deceive, in perpetrating the alleged misrepresentation on the driver's license application and the charged offense.

Further, unlike *Beechum*, no logical nexus existed between this extrinsic act and the present charge so that the extrinsic act was probative of Dothard's state of mind. At the time of his arrest, Beechum possessed contraband in the form of a silver dollar and two credit cards. The disputed issue concerned whether Beechum intended to return the silver dollar, as he claimed, or to keep it for himself. Although Beechum had possessed the credit cards for some ten months prior to his arrest, the Fifth Circuit held that it was permissible to question Beechum why he would give up the silver dollar if he had kept the credit cards. The court held the extrinsic offense, the stealing and possession of the credit cards, relevant to demonstrating Beechum's intent at the time of the current offense, the taking and possession of the silver dollar. The court noted that Beechum's possession of the credit cards with illicit intent at the time of his arrest diminished the likelihood that *at the same moment* he intended to return the silver dollar. *See United States v. Satterfield*, 644 F.2d 1092 (5th Cir. 1981) (per curiam) (prior failure to declare currency on Customs forms when entering country admissible to prove defendant's knowledge of

reporting requirement and specific intent to willfully violate same statute). In this case, the incident concerning Dothard's application for an Alabama license in no way demonstrates that he knew of the presence of items forty and forty-two on the form and that he knowingly and willfully falsified his Guard application.

Further, the prosecutor, by his own admission, undertook to try Dothard's propensity for crime rather than his state of mind at the time of the charged offense:

The Court: What are you trying to show?

[The Prosecutor]: That he lied and his mode of conduct is lying and concealing things and not telling the truth.

In so doing, the prosecutor violated the mandate of rule 404(b) precluding the admission of other acts to prove the character of a person.

Even had the extrinsic act evidence survived the first test, however, it failed to overcome the second obstacle. The temporal remoteness of the extrinsic act depleted this evidence of any force of probity whatsoever. *Jimenez*, 613 F.2d at 1376. Additionally, the cross-examination of Nichols cast doubt on whether Dothard ever possessed any illicit intent or even intended to represent himself as a VA employee in using a government identification card to verify his identity. Because the probative value of the evidence was far outweighed by its prejudicial impact, the court abused its discretion in not excluding the evidence.

We also note that the design or scheme exception does not encompass the evidence concerning Dothard's application for an Alabama license. Trooper Nichols's testimony failed to indicate that this incident was so intertwined with the crime charged as to indicate that they are separate components of a general plan. *Beechum*, 582 F.2d at 912 n.15. At most, this testimony feebly shows the defendant's *propensity* to commit crimes similar to the charged offense. *Goodwin*, 492 F.2d at 1153. We therefore conclude that the trial court erred in admitting Nichols's testimony on the issue of mode of operation.

### B. *Probation Officer's Testimony*

Dothard also contests admission of evidence concerning his probation officer's supervision visit in December, 1979. Almost two years after defendant's enlistment in the Guard, William Wynn, the probation officer, visited Dothard's home and saw him in a new automobile. Although Dothard denied owning the car, Wynn "checked the vehicle registration and found out" that Dothard was the owner. We need not consider whether this evidence was improperly admitted because the prosecutor withdrew this testimony due to his inability to introduce supporting records.

■ We next address the propriety of admitting the extrinsic act evidence that Dothard failed to report the fact of his Guard enlistment to his probation officer. On cross-examination, Dothard stated that he had learned of this requirement only shortly before the time of trial. We find that the prosecution failed to establish the requisite predicate from which a jury could reasonably find that Dothard committed the extrinsic act of misrepresentation. Because this evidence failed to clear the initial *Beechum* probity hurdle, we hold that the trial court abused its discretion in admitting this testimony.

■ In connection with Dothard's failure to report his Guard membership to Wynn, the prosecutor also showed that Dothard failed to continuously make restitution under the 1976 conviction as required and never applied any of his Guard pay towards the payment of restitution. On cross-examination, however, the probation officer conceded that Dothard was not required to pay his Guard salary as restitution, that Dothard had experienced employment difficulties, and that the court determined him to be indigent. Wynn further stated that he extended Dothard's probation period because these circumstances indicated that it was not unreasonable that Dothard had not completed payment of restitution.

This extrinsic act evidence also fails to satisfy the requirements of *Beechum* be-

cause insufficient evidence existed to establish a jury question as to whether Dothard ever committed an unlawful act in regard to the payment of restitution.

Finally, the prosecutor's closing argument readily demonstrates the contaminating effect of multiple-error and unnecessary cumulative evidence in this case. In his closing statements, the Assistant United States Attorney stated:

> What we have, ladies and gentlemen, is an individual, Mr. Dothard, the defendant, who feels that he can outmaneuver, outslick and lie himself through all of his problems in the world. Anytime a man refuses to tell the truth about something as simple as his employment when he is applying for a driver's license, then it is reasonable to believe that he is not going to tell the truth about a prior conviction or tell the truth under oath in this courtroom. He did not tell the truth with the probation officer, the driver's license examiner, the Veterans Administration in New York. The government submits that he did not tell the truth with respect to what happened when he applied for enlistment in the armed forces reserve unit.

This constitutes an impermissible attempt to demonstrate the accused's bad character to prove that he acted in conformity therewith in perpetrating the charged offense. Rule 405(b) prohibits such evidence because it is inherently prejudicial. *Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948).

## II. Other Issues

Because we decide that the district court abused its discretion in admitting the extrinsic act evidence, we find it unnecessary to address the remaining issues on appeal.

## CONCLUSION

For the reasons delineated above, we conclude that the district court improperly admitted the extrinsic act evidence in violation of Fed.R.Evid. 404(b) and the standards set forth in *United States v. Beechum*. In view of the meagre evidence

presented in this case, we cannot hold these errors harmless. Fed.R.Crim.P. 52(a). Accordingly, we reverse Dothard's conviction.

REVERSED.