[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14253
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20914-WPD-11

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICHARD EUGENE YOUNG, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 15, 2014)

Before TJOFLAT, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Richard Eugene Young appeals his convictions and total sentence of 327

months' imprisonment, imposed after being convicted of one count of conspiracy

to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846, and one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Young argues on appeal that the district court abused its discretion by allowing the government to introduce a stale conviction during cross-examination.  We agree and further conclude that this error was not harmless.  Accordingly, we vacate Young's convictions and sentence.

I.

At trial, Young conceded that he was guilty of the lesser-included offense of possession of cocaine but maintained that he intended to *use* the drugs he possessed, not distribute them.  Because this strategy put Young's intent in issue, the government sought to introduce, under Federal Rule of Evidence 404(b)(2), Young's two prior Florida felony convictions for possession with intent to distribute.  *See* Fed. R. Evid. 404(b)(2).  Given Young's trial strategy, the court found one of Young's convictions, a 2008 conviction involving cocaine distribution, admissible for purposes of proving his intent.  *See id.*  The court ruled that the other conviction, a 2001 conviction involving cocaine distribution and trafficking, was inadmissible given how old it was, but the court stated that it *might* be admissible for impeachment purposes if Young testified.  The government presented the 2008 conviction as evidence of Young's intent to distribute cocaine in the present case.

2

Young then testified in his own defense.  Consistent with his account that he intended to use the cocaine in question, which was in powder form, Young testified that he had been addicted to *powder* cocaine since the age of 16 and that, due to his addiction, he never dealt powder cocaine because he would use his supply.  Young accounted for the 2008 distribution conviction by explaining that he sold *crack* cocaine to support his drug habit.  He stated that he had been arrested and spent time in prison for selling *crack* and that he had been released in 2010, indicating that he was referencing his 2008 conviction.

On cross examination, the government again cited Young's 2008 conviction for possession with intent to distribute cocaine, this time in an effort to contradict his testimony.  Young insisted that his 2008 conviction was for dealing *crack*, but the government countered again by reiterating that Young's 2008 conviction was for distribution of *cocaine*.  Realizing the possibility for confusion, the court excused the jury and explained to the government that Florida did not distinguish between powder and crack cocaine and that Young's 2008 conviction "probably" involved crack, just as Young stated during his testimony.  The jury then returned, and the court explained to the jury what had just been explained to the government.  Then, the jury retired for the day.

At this point, the government renewed its request to introduce the 2001 conviction for distribution of cocaine and cocaine trafficking.  Young objected, but

3

the district court overruled the objection, holding that the government would be allowed to introduce the 2001 conviction for impeachment purposes. Young appeals on this issue, claiming the court committed reversible error by admitting the stale conviction.

### A.

"The decision of a defendant with prior convictions to testify has always raised a problem . . . . [O]n the one hand, a jury cannot properly infer from evidence of prior criminal convictions that the accused is a bad man, who, with a proven propensity to commit crimes, probably committed the crime in question." *United States v. Tumblin*, 551 F.2d 1001, 1004 (5th Cir. 1977).[1] We have recognized that even with limiting instructions the jury is likely to make just this type of impermissible inference. *See United States v. Pritchard*, 973 F.2d 905, 908 (11th Cir. 1992). Nevertheless, "the credibility of a defendant, like that of any other witness, is subject to impeachment through evidence of his prior convictions." *Tumblin*, 551 F.2d at 1004. In light of these competing concerns, the Federal Rules of Evidence have created a presumption *against admissibility* in cases like this, where the prior conviction is more than ten years old,[2] and "such

---

[1] This court adopted as binding precedent all decisions made by the Fifth Circuit issued on or before October 1, 1981. *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[2] *See* Fed. R. Evid. 609(b) ("This subdivision applies if more than ten years have passed since the witness's conviction or release from confinement . . . ."). It is undisputed that Young

convictions will be admitted *very rarely and only in exceptional circumstances*." *Pritchard*, 973 F.2d at 908 (emphasis added) (internal quotation marks omitted); *see also* Fed. R. Evid. 609(b) ("Evidence of the [stale] conviction is admissible only if . . . its probative value . . . *substantially outweighs* its prejudicial effect . . . ." (emphasis added)). Further, even when prior convictions are admissible, the scope of cross examination regarding those prior convictions is narrowly circumscribed. *See Tumblin*, 551 F.2d at 1004.

Both parties and the district court analyzed the admissibility of the 2001 conviction under these familiar rules, but we believe they were mistaken in doing so. Rule 609 applies when a party uses a prior conviction to attack "a witness's *character for truthfulness*," Fed. R. Evid. 609(a) (emphasis added), and it accordingly applies "in those cases where the conviction is offered *only* on the theory that people who do certain bad things are not to be trusted to tell the truth." *United States v. Johnson*, 542 F.2d 230, 235 (5th Cir. 1976) (emphasis added). This was not the purpose for which the 2001 conviction was introduced, as the government instead sought to *directly* respond to Young's testimony about his intent. As we said in *Johnson*, "[w]e do not believe Rule 609 was meant to cover this particular species of impeachment use of a prior conviction." *Id.* "Here the

---

was released from confinement following his 2001 conviction in November of 2002, which makes the 2001 conviction more than ten years old for purposes of Rule 609(b).

5

evidence had a different, surer value in that it directly contradicted the position taken by the witness." *Id.*[3]

Thus, we find that by testifying as he did, Young did more than open the door to impeachment by prior convictions under Rule 609, circumscribed by *Tumblin*'s strict limitations on the scope of permissible cross examination. Young testified *about his criminal history*, opening the door further, allowing additional convictions into evidence and expanding the scope of permissible cross examination about those convictions. *See also United States v. Vigliatura*, 878 F.2d 1346, 1351 (11th Cir. 1989) (per curiam) (recognizing that counsel "opened the door" to broader cross examination by questioning the defendant about prior charges and convictions which were otherwise clearly inadmissible under Rule 609).

Where a defendant testifies about his criminal history or where he puts facts that might be contradicted by a prior conviction in issue, we are comfortable concluding that Rule 609's standard does not apply for two primary reasons. First, when a prior conviction contradicts (or more fully explains) a defendant's

---

[3] Were we to analyze Young's claim under Rule 609(b) as he and the government suggest we should, we would have little difficulty concluding that the district court erred. For reasons discussed more fully below, the prejudicial effect of the 2001 conviction substantially outweighs its probative value. Under Rule 609(b), the conviction would only be admissible if the exact opposite were true. Thus, the district court clearly erred to the extent that it allowed the government to rely on the 2001 conviction for general impeachment purposes under Rule 609(b). We continue our analysis from here only because, under *Johnson*, there appears to be a stronger basis for affirming the district court's decision than the reasons presented by the government or considered by the district court below.

testimony, instead of drawing a circuitous connection between a ten year old felony and a general lack of trustworthiness, "the evidence ha[s] a different, surer value." *Johnson*, 542 F.2d at 235. That is, the prior conviction is more probative in this context. Second, the prejudicial effect of a prior conviction is likely to be much lower in this context, where a defendant has already testified about prior convictions or events that can be contradicted by those prior convictions. In these situations, the impeaching cross-examination is likely not the first time the jury learns of the defendant's criminality. We are therefore confident that Rule 609(b)'s presumption need not apply here. *See id.*

That Young opened the door further than the ordinary testifying defendant does not give the government carte blanche to introduce all prior convictions and to discuss them for any purpose, however.[4] Particularly here, where it is clear that the 2001 conviction was not admissible for Rule 609(b) general impeachment purposes, we must consider the perhaps more appropriate purposes for which the 2001 conviction might have been admissible. Two purposes are apparent: first, the

---

[4] The Supreme Court has held that if a defendant is notified in advance by the court and the government that a prior conviction will be introduced under Rule 609 for impeachment purposes if he chooses to testify, and the defendant opts to do so but attempts to "remove the sting" of the conviction by bringing the conviction up himself, he waives his right to challenge the admissibility of the conviction under Rule 609 on appeal. *See Ohler v. United States*, 529 U.S. 753, 755, 758 120 S. Ct. 1851, 1852–54 (2000). *Ohler* does not bar Young's appeal because Young testified only about his 2008 conviction and thus did not waive his right to challenge the admissibility of the 2001 conviction. Moreover, he was not the first to introduce his convictions because the government introduced his 2008 conviction in its case in chief for Rule 404(b)(2) purposes. Thus, Young retains the right to challenge the district court's decision to admit the 2001 conviction.

government sought to introduce the 2001 conviction to *directly* contradict statements made by Young; second, the government sought to introduce the 2001 conviction to reestablish intent. Accordingly, Rules 403 applies. *See United States v. Leavis*, 853 F.2d 215, 220 (4th Cir. 1988) (explaining, after citing our opinion in *Johnson*, that convictions "introduced to contradict specific statements made by [the defendant] on direct examination [are] analyzed under Fed. R. Evid. 403"). Additionally, because the prior conviction was arguably offered to prove Young's intent, Rule 404(b) applies. *See* Fed. R. Evid. 404(b) ("(1) Evidence of a crime . . . is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. (2) This evidence may be admissible for another purpose, such as proving . . . intent . . . .").

We have explained that admissibility under Rule 404(b) is analyzed in two steps. *United States v. Dothard*, 666 F.2d 498, 501 (11th Cir. 1982). The first step is a Rule 401 analysis for relevance to an issue *other than* the defendant's character. *Id.* at 501–02. Here, it is clear that the 2001 conviction has at least some relevance for purposes of establishing Young's intent to deal drugs. The second step is a Rule 403 analysis under which the court must "balance the probative value of the [prior conviction] against its potential for undue prejudice. This determination lies within the sound discretion of the trial court and calls for a commonsense assessment of all the circumstances surrounding the [prior] offense,

8

including prosecutorial need, the overall similarity between the extrinsic act and the charged offense, and the temporal proximity of the two." *Id.* at 502–03 (internal quotation marks omitted); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value *is substantially outweighed* by a danger of . . . prejudice . . . or misleading the jury . . . ." (emphasis added).[5] Ultimately, then, we should vacate Young's conviction only if the district court erred in admitting the 2001 conviction under Rule 404(b), which includes a Rule 403 analysis.

## B.

Even under a pro-admissibility standard and a deferential standard of review, we ultimately conclude that the 2001 conviction was admitted in error because the prejudicial effect of the evidence was substantial and the probative value was exceedingly low. Accordingly, we find an abuse of discretion and vacate Young's convictions and sentence.

The government asserts that the evidence was properly admitted for four primary reasons. (1) The 2001 conviction was useful to disprove Young's account

---

[5] The concern underlying the second step of a Rule 404(b) analysis (essentially, a Rule 403 analysis) is the same concern articulated in *Pritchard*: "The jury, despite limiting instructions, can hardly avoid drawing the inference that the past conviction suggests some probability that the defendant committed the similar offense for which he is currently charged." 973 F.2d at 908 (internal quotation marks omitted); *see also Tumblin*, 551 F.2d at 1004 ("[A] jury cannot properly infer from evidence of prior criminal convictions that the accused is a bad man, who, with a proven propensity to commit crimes, probably committed the crime in question."). Young's appeal, at bottom, centers on this concern. We note that Young raised a Rule 403 challenge in his brief.

of his lack of intent to distribute cocaine in this case; this serves two related purposes of rehabilitating the government's own theory of intent and discrediting Young's theory. (2) The 2001 conviction, which involved trafficking as well as distribution, "directly contradict[s] Young's claim that he was nothing more than a drug addict . . . and . . . low-level drug dealer." Relatedly, the district court explained that the trafficking conviction would be more probative than a mere possession conviction. (3) As the district court and the government also noted, the fact that the conviction was only stale (for Rule 609 purposes) by six months and the fact that Young's conduct since that conviction has not changed cut in favor of admissibility. (4) Credibility was critical to this case, increasing the government's need to use all available evidence to impeach Young.

These arguments are unpersuasive. As to the first argument—that the evidence reestablished Young's intent—the 2001 conviction was entirely cumulative and thus minimally probative on this point. Young *admitted* to dealing drugs in the past, and the 2008 conviction for possession with intent to distribute had already been presented. There was no doubt whatsoever that Young had in the past formed the intent to deal drugs. For this reason, the 2001 conviction was also entirely unnecessary to directly contradict Young's testimony about his prior drug-dealing conviction. Young admitted to having dealt *crack* cocaine but denied ever having dealt *powder* cocaine. The 2001 conviction did not contradict that

10

statement.  The only dispute regarding Young's criminal history was whether he had ever dealt *powder* cocaine, and like the 2008 conviction, the 2001 conviction involved Florida statutes that do *not* distinguish between crack and powder cocaine.  Even after reviewing the details of that conviction, the district court determined that the 2001 conviction was ambiguous as to the type of cocaine involved.  Thus, the 2001 conviction did not in fact contradict Young's testimony about his intent.

Not only does this cut against admissibility under Rule 403 because it shows that the probative value of the conviction is low, it also cuts against admissibility under step one of the Rule 404(b) analysis.  In *Dothard*, we explained that the prior bad act "must have more than a mere characteristic in common [with the charged offense]; the common characteristic must be *the significant one* for the purpose of the inquiry at hand."  666 F.2d at 502 (emphasis added) (internal quotation marks omitted).  The significant characteristic in this case was *not* whether Young ever intended to deal cocaine-type drugs; he admitted that he had that intent.  Instead, the significant characteristic is whether Young ever intended to deal *powder* cocaine in the past, and the 2001 conviction does not shed light on that question.  In fact, as explained below, the 2001 conviction is potentially misleading on that critical issue.

11

The second reason offered in favor of admitting the 2001 conviction—the fact that it involved cocaine trafficking, a more serious drug offense than mere distribution—actually leads to an entirely inappropriate inference, rather than adding legitimate probative value.  In admitting the conviction, the district court noted that the trafficking offense has more probative value for purposes of establishing a defendant's intent to distribute than a mere possession conviction, which is of course true, but does not advance the analysis.  Because the key issue is Young's intent to distribute, a mere possession conviction would be less probative than a trafficking offense, but a conviction for possession *with intent to distribute*, like the already-admitted 2008 conviction, is most probative of his intent.

Any further inference drawn from the fact that Young also trafficked cocaine is prejudicial and not legitimately probative.  The government admitted that the trafficking conviction tended to show that Young was a higher-level drug dealer than his 2008 conviction alone might suggest.  This type of character evidence, which paints Young as a big-time drug dealer and a bad man, is exactly what Rule 404(b)(1) is designed to keep from the jury.  *See, e.g.*, *Tumblin*, 551 F.2d at 1004 (reversing a conviction where the "obvious significance of . . . questioning [a defendant about prior convictions] was not to damage [the] defendant's credibility

12

as a witness . . . but instead to suggest, quite improperly, that defendant was a man who had spent most of his young life committing and serving time for crimes").[6]

So why would this conviction be admitted?  As just discussed, it was not necessary to establish Young's intent.  The government asserts that this evidence was necessary to rebut Young's assertion that he was a low-level drug dealer, but the problem is, neither Young nor his attorney asserted that he was a low-level drug dealer.  He distinguished his drug dealing by type (crack versus powder cocaine), not by quantity.  It appears, then, that the government itself identified a highly prejudicial inference that the jury was supposed to draw from this evidence that did not serve a legitimately probative purpose.  *See Dothard*, 666 F.2d at 504 (finding reversible error under Rule 404(b) where "the prosecutor, by his own admission, undertook to try [Defendant's] propensity for crime rather than his state of mind at the time of the charged offense").  Because the evidence is cumulative on the only issue for which it could be properly used, the evidence's probative value is minimal.

Next, the government asserted that the 2001 conviction was only ten years and six months old and that Young's subsequent behavior showed that the 2001 conviction, though old, paints a fairly accurate picture of who Young was at the time of his trial.  That is certainly true, but again, Young painted that picture for

---

[6] *Tumblin* dealt with the admissibility of a prior conviction under Rule 609, but as discussed *supra* in note 5, the concerns underlying Rule 404(b)(1) and Rule 609(b) are the same.

13

the jury himself: he admitted to being a drug addict and a drug dealer, so the 2001 conviction was entirely unnecessary to complete that picture. Moreover, in *Dothard*, we explained that under the second step of a Rule 404(b) analysis, "temporal remoteness of the [prior conviction] depleted this evidence of any force of probity whatsoever." *Id.*; *see also Pritchard*, 973 F.2d at 909 (noting that, as time passes, the probative value of a prior conviction into a defendant's character for truthfulness fades). Stale convictions are sometimes admissible, however, when they are the only conviction available, *see id.*, but here, other newer convictions were available.[7]

This same response weakens the government's fourth argument in favor of the 2001 conviction's probative value, as well. It is certainly true that credibility was central to this case, and that entitled the government to thoroughly impeach Young's credibility by use of prior convictions. But to the extent that the conviction was offered for general impeachment purposes, Rule 609(b)'s anti-admissibility standard applies. For Rule 609 purposes, the probative value of the 2001 conviction was relatively low. To the extent that evidence of Young's criminality was going to persuade the jury that he lacked credibility, the jury already had more and better information upon which to make this determination.

---

[7] *Pritchard* analyzed the admissibility of a prior conviction under Rule 609. As discussed, to the extent that the government offered the 2001 conviction for Rule 609 general impeachment purposes, it was clearly inadmissible. We cite *Pritchard* here merely to support the common sense proposition that a prior conviction's probative value diminishes with time.

14

Young admitted to having a criminal drug conviction, and the government had already impeached him with the 2008 conviction.

Further, when considering prejudice under a Rule 609 analysis, the more similar a prior conviction is to the present offense, the more prejudicial it is, militating against admissibility. *See United States v. Cathey*, 591 F.2d 268, 275–76 (5th Cir. 1979) ("[I]f the prior conviction is similar to the new charges, the jury may misuse the prior conviction as evidence of guilt . . . ." (citation omitted)). Here, as the government and the court admitted, the nature of the 2001 conviction—a trafficking offense—was perhaps even more prejudicial than an identical distribution conviction would have been, as it could, in addition to supporting an inference that Young had a propensity to deal drugs, also support an inference that Young had a propensity to deal drugs in large quantities. All of these factors cut against admissibility here: there were other less similar (and therefore less prejudicial), newer (and therefore more probative into character for truthfulness) prior convictions readily available for use to impeach Young, including a non-stale simple possession conviction. Yet the government did not seek to introduce these convictions; it only sought to introduce the one with the most potential for inappropriate prejudice. Given Rule 609(b)'s anti-admissibility standard, the district court erred to the extent that it allowed the government to rely on the 2001 conviction for general impeachment purposes.

15

Taken as a whole, the government's assertions about the 2001 conviction's probative value are weak. At the same time, it appears that the only information the 2001 conviction conveyed to the jury that the jury did not already know created the possibility of an impermissible inference. However, given the extent to which the jury already knew about Young's criminal history, the prejudicial effect of the 2001 conviction was partially blunted. If the jury was inclined to ignore the court's limiting instructions and draw an improper propensity inference, it already had the information necessary to do so. In two ways, however, the 2001 conviction created the potential for additional prejudice beyond that created by the 2008 conviction and other evidence properly before the jury.

First, the government conceded that the 2001 conviction for cocaine trafficking created the potential for an inappropriate inference that was more severe than the similar potential created by the 2008 conviction. The trafficking conviction showed that Young was "more than a drug addict and, at most, low-level drug dealer." As noted, however, Young did not state differently, so this use of the 2001 conviction was highly prejudicial and, contrary to the government's position, had no impeaching value. Again, persuading the jury that Young is a big-time drug dealer creates *precisely* the type of inference that Rules 403, and, more specifically, 404(b)(1), are designed to prevent: "Evidence of a crime . . . is not admissible to prove a person's character in order to show that on a particular

16

occasion the person acted in accordance with the character." *See* Fed. R. Evid. 404(b)(1). As we explained in *Pritchard*, even with a limiting instruction, and even without explicit argument on the point, a jury is likely to draw improper propensity inferences. *Pritchard*, 973 F.2d at 908. The introduction of the 2001 conviction substantially increased this possibility.

Second, after the 2001 conviction for cocaine trafficking was introduced, the jury was *not* informed that Florida's cocaine trafficking statute did not differentiate between powder and crack cocaine. After the 2008 conviction for possession with intent to distribute cocaine was introduced to the jury, the court recognized that the jury was under the mistaken impression that Young's conviction involved powder cocaine when, in fact, it probably did not. The court clarified any confusion by explaining the Florida statute to the jury. When the court determined that the 2001 conviction was admissible, it stated that "the same understanding has to be given to the jury that the trafficking in cocaine could have been crack cocaine." This never happened, however.

Moreover, the 2001 conviction was not introduced until the day after the court's clarification that the 2008 conviction did not necessarily involve powder cocaine, decreasing the odds that the jury would recall that clarification. And even if the jury recalled the clarification, the 2001 conviction involved a new statute, so the jury may have assumed—both because a new statute was at issue and because

17

the court reacted differently than before—that the trafficking conviction did indeed involve powder cocaine.  To the extent that the jury reached this conclusion, the prejudice to Young was extreme, as this conclusion would erroneously convey that his testimony was directly contradicted by a prior conviction and that he lied.  In reality, the 2001 conviction neither confirmed nor contradicted his testimony.[8] Given the court's different treatment of the 2001 conviction and the fact that it involved a different statute, the 2001 conviction was uniquely prejudicial. Weighed against the conviction's minimal probative value, prejudice predominates.

Relying on Rules 403 and 404(b)(1), the Fourth Circuit has vacated a conviction in similar circumstances.  *See United States v. Hernandez*, 975 F.2d 1035, 1041 (4th Cir. 1992).  In *Hernandez*, the Fourth Circuit stated:

---

[8] An example shows how misleading this would be to the jury.  Most people, when they hear someone refer to a beverage as Coke, assume the speaker is referring to Coca-Cola.  But some people *mean* soda in general when they use the word Coke.  So if someone says, "I never drank Coke," but an official document of the state of Florida says the person drank Coke, most people would assume the speaker was lying.  But if the speaker admitted to drinking Sprite and if it were further clarified that the Florida document was using Coke in the general sense that simply means soda, most people would conclude that the speaker was in fact telling the truth, and certainly people would no longer conclude that the speaker was necessarily lying.

To prove just how misleading and confusing the Florida statute's use of the generic word cocaine would be to a jury, the prosecution in this case apparently believed that the 2008 and 2001 convictions for cocaine distribution and trafficking directly disproved the defendant's testimony, *even after* the defendant had already explained that his convictions were for crack.  It did not register with the prosecution that a conviction involving cocaine could include a conviction involving crack until the judge explained Florida's drug laws in some detail.  Given that Young's credibility hinged largely on the substance involved in his prior convictions, the potentially misleading presentation of the 2001 conviction was highly prejudicial.

18

> [T]he probative value of the evidence is slight. [The defendnat's] . . . sale of crack in New York at some indefinite time [was] in no way connected to the cocaine she is charged with conspiring to sell in this case. The evident effect, if not the purpose, of [the disputed] testimony [was to] depict[] [the defendant] as an experienced crack dealer. But *this is precisely the effect Rules 403 and 404(b) seek to avoid*. Upon consideration of all the circumstances, we think the balance so one-sided that admission of the evidence was error.

*Id.* (emphasis added). It seems that the government's admitted purpose for presenting the 2001 conviction was, at least in part, to create this exact same prejudicial effect by persuading the jury that Young was a high-level drug dealer. *See also Dothard*, 666 F.2d at 504 (explaining that a court erred under Rule 404(b) in admitting evidence of a prior bad act where the evidence was used for propensity purposes).

The 2001 conviction is also similarly one-sided. Its prejudicial effect was severe as it misleadingly undermined perhaps the most important portion of Young's testimony. Moreover, it cast Young as a "high-level" drug dealer, making the prospect of an improper propensity inference all the more likely. *See Pritchard*, 973 F.2d at 908 (explaining that, despite a limiting instruction, it will be very difficult for juries not to draw inappropriate propensity inferences when prior convictions are admitted). *But see United States v. Chirinos*, 112 F.3d 1089, 1100 (11th Cir. 1997) (explaining that we presume a jury follows instructions).

To offset this prejudice, there is almost no probative value. The only legitimate purposes the conviction might have served were never in dispute and

19

had already been proven conclusively.  Contrary to the government's assertion, the 2001 conviction did not actually contradict Young's testimony and at least partially confirmed it.  Accordingly, we find that the district court abused its discretion in admitting the 2001 conviction.

Moreover, given the substantial prejudice injected into this trial on a critical issue, we cannot say that this error was harmless.  *See Dothard*, 666 F.2d at 505. Erroneously admitting evidence will not result in reversal if the error was harmless, such that the defendant "has not shown prejudice to a substantial right."  *United States v. Burston*, 159 F.3d 1328, 1336 (11th Cir. 1998).  Here, however, admitting the 2001 conviction prejudiced the jury against Young in multiple ways.  Further, the government's case was far from overwhelming as evidenced by the fact that nothing directly contradicted Young's theory of the case and by the fact that the first jury to consider this case, a jury that did not know of the 2001 conviction, could not reach a verdict.

Because the district court's error in admitting the 2001 conviction was not harmless, we vacate Young's convictions and sentence.

## II.

Our holding in Part I renders it unnecessary for us to consider the substantive reasonableness of Young's sentence.

**VACATED and REMANDED.**

20