UNITED STATES of America, Plaintiff-Appellee,

v.

Cleveland TUMBLIN, Defendant-Appellant.

No. 76–1624.

United States Court of Appeals, Fifth Circuit.

May 9, 1977.

1. See footnote 1, *supra*.

John Volz, Federal Public Defender, Louis Moore, Jr., Richard T. Simmons, Jr., Asst. Federal Public Defenders, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, George R. Simno, III, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before MORGAN and HILL, Circuit Judges, and NOEL,* District Judge.

LEWIS R. MORGAN, Circuit Judge:

Cleveland Tumblin appeals his conviction for violation of the Gun Control Act of 1968. Specifically, a two-count indictment charged the defendant with violation of 26 U.S.C. 5861(d) and (i), *as amended by* Pub. L.No. 90–618 (1968),[1] for possession of a sawed-off shotgun that was not registered in the National Firearms Registration and Transfer Record and was not identified by a serial number, as required by federal law. Defendant argues that the Government, in its cross-examination of him and in its closing argument, raised improper matters collateral to his prior convictions that prejudiced his right to a fair trial.

The issue at trial was essentially the credibility of the witnesses for the opposing sides. That is, the Government called two New Orleans police officers to the stand who testified about the events that led up to their discovery of the gun on defendant and their subsequent arrest of him. Defendant, on the other hand, testified that he was walking innocently down the street one June evening when these officers assaulted him and arrested him for possession of a gun that he had never before seen. To defend his position in this proverbial swearing contest, the defendant took the stand. In response to questions by his counsel on direct examination, the defendant admitted that he had been convicted of three felonies and disclosed the dates of conviction and nature of the crimes involved, to wit: attempted burglary, September 5, 1970; armed robbery, July 6, 1972; and assisting in a prison escape, December 16, 1976. On cross-examination, the Government not only reaffirmed the existence of these prior convictions, but also, over the vociferous objections of defense counsel, delved into such matters as the length of confinement, the interim period of freedom between a particular release date and defendant's next arrest for a crime, and defendant's unemployment between confinements.[2] In his

---

* Senior District Judge of the Southern District of Texas, sitting by designation.

1. That statute reads in pertinent part:
   It shall be unlawful for any person—
   (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; or
   (i) to receive or possess a firearm which is not identified by a serial number as required by this chapter.

2. Q  Well, let me ask you this, let's get back to something else, were you working at this time, Mr. Tumblin?

A  No, I wasn't employed by nobody. Maybe I got done a little work for my neighbors and things, maybe a little grass cutting, my cousin and things, you know, which they self-employed, you know.
Q  Where were you living at this time?
A  8832 Belfast Street.
Q  8832 Belfast, then whose address is that?
A  That's my mother's and my father's where I stay, too.
Q  When was the last regular job that you had?
A  The last regular job?

MR. MOORE:

Your Honor, I object to this as being irrelevant and immaterial to the charge.

THE COURT:

Overruled, counsel, cross-examination.

EXAMINATION

BY MR. SIMNO:

Q When was the last job you had on the day you were arrested?

A On the day I was arrested?

Q Yes, going back to last summer, I am not talking about now, I am talking about last summer when you were arrested, how long prior to your arrest were you—

MR. MOORE:

Your Honor, I object to—

THE WITNESS:

I wasn't—

MR. MOORE:

Excuse me. It could lead to a question—

THE COURT:

Objection overruled, counsel, I already ruled on the objection.

EXAMINATION

BY MR. SIMNO:

Q Can you answer that question, Mr. Tumblin, do you know?

A In other words, I'd be away for a armed robbery charge, I wasn't home.

Q Okay, well, let's stop there, you were convicted of armed robbery on or about November 3rd, 1972, is that correct?

A November 3rd, 1972.

Q Is that about when you were sentenced to the penitentiary at Angola?

A Okay.

Q In October, '72, you arrived at Angola, is that correct?

A No, November I arrived there.

Q November, that was on an armed robbery conviction?

A Yes.

Q Now, let me ask you, the sentence you received in the armed robbery was five years, is that correct?

A Right.

Q When were you released from the state penitentiary?

MR. MOORE:

Your Honor, I object to this being improper question for cross-examination and the basis for this, I think is that those particular questions should be addressed to credibility of the witness. I think they're improper because it does not pertain to the indictment before the Court.

THE COURT:

Objection overruled.

EXAMINATION

BY MR. SIMNO:

Q Mr. Tumblin, you said you had been away a long time in the penitentiary, when were you released on that armed robbery charge?

A June 5th.

Q What year?

A 1975.

Q June 5th, and you were arrested on June 26th?

MR. MOORE:

Your Honor, at this time I would like to voice continuing objection to this line of questioning about arrest. Certainly, convictions are important—

MR. SIMNO:

I am talking about this arrest in this case.

MR. MOORE:

I would like to finish the objection. Arrests are not of moment and not of any probative value, I would object on those grounds.

THE COURT:

Overruled, counsel, he is referring to the arrest we have been talking about all day.

EXAMINATION

BY MR. SIMNO:

Q You were arrested on June 26th, for this offense?

A Yeah.

Q Is that about two, or three weeks after you got released?

A Three weeks.

Q Now, had you been employed between June 5th, when you returned from the penitentiary, until June 26th, in that two, or three weeks?

A I was self-employed.

Q Cutting grass?

A Just cutting grass, in other words, I was in the process of attempting, supposed to be a staff, like rehabilitation thing for like maybe any person be away more than two-and-a-half to three years, like they felt wasn't supposed to be stable and they can fit them back into society and I was trying to enter this program which I was going to the program which I had been transferred from this counsel to that counsel, but went through this medicare and this medicare, this doctor and that doctor and I was still in the form of being processed in.

Q But, when the police arrested you on this charge, you couldn't try to get a job, then, because you were in jail?

A I was in jail.

Q All right, let me ask you this, Mr. Tumblin, since you were arrested on this charge, you've been convicted again, is that correct?

A Yes.

Q When were you convicted again?

A December 19th.

Q 1975?

A '75.

Q That's just two, or three months ago, is that correct?

A Maybe two months ago.

Q Now, what were you convicted of?

A Assisting escape.

Q That was from the Parish Prison?

A Yes.

Q And you were guilty?

A And guilty plea.

R., p. 165–170.

closing argument, the prosecutor reemphasized the short period of time between defendant's release and his subsequent arrest for the present violation: "[H]e was truthful about that he has been convicted of armed robbery *and just released from jail two weeks before he was caught with another—with a sawed-off shotgun.*"[3] (Emphasis added.) In addition, the prosecutor stated: "and I urge you . . . if you believe Mr. Tumblin, don't convict him, *just because he has three felony convictions and he is twenty-three years old, or twenty-four years old*, don't convict him for that. *But think about that* . . . ."[4] (Emphasis added.) The defense did not object to either of these portions of closing argument.

■■■ Defendant argues that the cross-examination and closing argument in question prejudiced his right to a fair trial and constitute reversible error. We agree. The decision of a defendant with prior convictions to testify has always raised a problem in reconciling two potentially conflicting rules of evidence. Thus, on the one hand, a jury cannot properly infer from evidence of prior criminal convictions that the accused is a bad man, who, with a proven propensity to commit crimes, probably committed the crime in question. *See United States v. Blair*, 470 F.2d 331, 339, n. 17 (5th Cir. 1972); *Hurst v. United States*, 337 F.2d 678 (5th Cir. 1964). Yet, on the other hand, the credibility of a defendant, like that of any other witness, is subject to impeachment through evidence of his prior convictions. *See* Fed.R.Evid. 609; *United States v. Bedgood*, 453 F.2d 988 (5th Cir. 1972); *Bendelow v. United States*, 418 F.2d 42 (5th Cir. 1969), *cert. denied*, 400 U.S. 967, 91 S.Ct. 379, 27 L.Ed.2d 387 (1970). To insure that evidence of prior convictions is considered only for impeachment purposes, this court has limited the prosecutor's scope of inquiry about these convictions on cross-examination. Thus, in *Tucker v. United States*, 409 F.2d 1291 (5th Cir. 1969); *on appeal after remand sub nom. United States v.*

*Woodall*, 438 F.2d 1317; *cert. denied*, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712, we held that a testifying defendant is required "to give answers only as to whether he had been previously convicted of a felony, as to what the felony was, and as to when the conviction was had." *Id.* at 1294, n. 1. *Accord, United States v. Bray*, 445 F.2d 178, 182 (5th Cir. 1971), *cert. denied*, 404 U.S. 1002, 92 S.Ct. 571, 30 L.Ed.2d 555 (the cross-examiner should limit his questions concerning prior crimes to the number of prior convictions, the nature of each of the crimes charged, and the date and time of each conviction). Here, inquiries about the number, date and nature of previous convictions on cross-examination of the defendant were proper. The prosecutor, however, exceeded a reasonable scope of questioning. His cross-examination emphasized that defendant had been released from confinement for one conviction for only a couple of weeks when he was again arrested for a criminal violation, that he had held no regular job in the last couple of years because he had been serving so much time in jail on previous convictions, that indeed for many years prison had been the only home the defendant had known. The obvious significance of this questioning was not to damage defendant's credibility as a witness—the fact of conviction alone achieved that goal—but instead to suggest, quite improperly, that defendant was a man who had spent most of his young life committing and serving time for crimes, rather than being gainfully employed. Likewise, the prosecutor's closing argument reemphasized this theme.

The Government argues that any impropriety in the closing argument can justify reversal only if it is determined to be plain error, in that the defense did not object to the parts of that argument now in question. Because, as discussed below, we decide that the cross-examination constituted reversible error, we do not have to determine whether the closing argument constituted plain error and was sufficiently prejudicial, alone,

---

**3.** R., p. 189–90.

**4.** R., p. 192–93.

to justify reversal.[5] We do observe, however, that those objectionable parts of the closing argument[6] seriously compounded the error committed during cross-examination and would not have been even a proper subject of argument by the prosecution had they not originally been admitted into evidence.

The Government also contends that even if some of its cross-examination constituted error, the objectionable questions occupied only a small portion of the total cross-examination of the defendant and constitute only harmless error. We disagree with this contention. As Judge Roney noted in his carefully reasoned opinion in *United States v. Garber*, 471 F.2d 212, 216 (5th Cir. 1972): "*The critical balance between the permissible and impermissible uses of the prior conviction evidence, and the mental discipline required of the jury to restrict the use of this evidence require that the court, counsel, and all persons appearing before the jury exercise the same discipline required of the jurors. A prophylactic atmosphere must permeate the trial if this rule of evidence is to be properly applied.*" (Emphasis added.) As in *Garber*, the prosecutor here upset that delicate balance. The crucial question before the jury was whether it was to believe the police officers or the defendant. In such a case, the dangers of using prior conviction evidence to imply that the defendant is a "bad seed," as opposed to implying merely that his credibility as a witness is questionable, exist at their most devastating level. In reversing this conviction,

> We do not mean to suggest that criminal trials must be run with the punctilio of the duelist's code. After all, our Constitution and laws command fair trials, not

perfect ones. Yet, we do not reverse this case because of trial peccadillos. We reverse because our criminal justice system guarantees the primacy of the jury . . in fact finding and because our jurisprudence promises conviction on guilt of the crime charged, not on antecedent or subsequent sins.

*United States v. Cisneros*, 491 F.2d 1068, 1078 (5th Cir. 1974).

REVERSED.

---

5. In *Garber*, 471 F.2d 212, this court held that prejudicial comments made during closing argument by the prosecutor to which the defense offered no objection constituted plain error.

6. To an extent, the defense invited some of the Government's comments in closing argument. That is, in his own closing argument defense counsel contended that the defendant's testimony was credible since the defendant had been forthright enough to admit on direct ex-

amination his previous convictions. Thereafter, it was proper for the Government counsel to argue that the defendant's action revealed no great honesty on his part since the Government could have cross-examined the defendant on these convictions even if the latter had not brought them up himself. The prosecutor, however, could have made a simple statement to that effect without coloring his remarks with other prejudicial comments.