**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Alan "Jamie" VIGLIATURA,**
**Defendant–Appellant.**

**No. 88–3163**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 3, 1989.

Mark Pizzo, Federal Public Defender, for defendant-appellant.

Before HILL, and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

This case involves the theft of goods in interstate commerce. The defendant appeals his conviction on three grounds each allegedly involving plain error. We reject his arguments and affirm his conviction.

## I. BACKGROUND

Bruce Nolf (Nolf) was a local route truck driver for Brown Transportation Corporation (Brown). On March 10, 1986, Nolf drove a Brown truck to pick up forty-eight television sets and twenty-five television cabinets from a Brown warehouse in Tampa, Florida. The shipment of televisions and cabinets had originated in South Plainfield, New Jersey, and Nolf was to deliver these items to a nearby department store.

While on his delivery route, Nolf decided to visit Vigliatura's apartment for lunch. Nolf stated that during this visit he and Vigliatura agreed to steal the televisions, load them on a rental truck, and sell them for $200–250 apiece. Nolf and Vigliatura then rented a truck. They drove the two trucks to an isolated area and transferred the televisions from the Brown truck to the rental truck. Later that afternoon, Vigliatura and Nolf abandoned the Brown truck and Nolf reported it stolen to the Brown dispatch office.

Vigliatura's account of the day's events differed from Nolf's version. He claimed that Nolf told him that the televisions were defective and that Brown had authorized Nolf to sell them. Vigliatura states that when he and Nolf loaded the televisions into a rental truck, he did not think they were stealing them; it was not until later on that Vigliatura suspected the televisions were stolen.

On October 20, 1987, a grand jury indicted Vigliatura and Nolf on one count of theft of goods involved in an interstate shipment of freight. 18 U.S.C. §§ 2, 659. Vigliatura's jury trial commenced on January 4, 1988 in the Middle District of Florida. Nolf's case was transferred to the Western District of Oklahoma for plea and sentencing. Fed.R.Crim.P. 20. Nolf testified as a government witness against Vigliatura. The jury returned a verdict of guilty against Vigliatura and he appeals his conviction.

## II. DISCUSSION

Vigliatura raises three issues on appeal each involving the plain error doctrine. First, he claims that the government's introduction of co-defendant Nolf's guilty plea during Nolf's direct examination constitutes plain error requiring reversal of Vigliatura's conviction. Second, he argues that the government improperly elicited the fact that co-defendant Nolf had taken a lie-detector test during Nolf's employment with Brown trucking company. He claims this testimony also constitutes plain error requiring reversal. Third, he asserts that the government improperly questioned him about his prior convictions and one arrest which did not result in a conviction. Although Vigliatura's counsel made no objection at trial to any of these three alleged errors, Vigliatura argues that his substantial rights were adversely affected requiring reversal of his conviction.

### A. Nolf's Guilty Plea

During Nolf's direct examination, the prosecutor elicited from Nolf that he had pleaded guilty to the indictment in the Oklahoma District Court and that he did not have any specific plea agreement with the government. Nolf told the jury that he had not been sentenced and that he was facing up to ten years incarceration and a $10,000 fine. Nolf stated that the prosecutor promised to advise the sentencing judge of Nolf's cooperation but that the prosecutor would make no sentencing recommendation.

Vigliatura failed to object to the government's direct examination of Nolf. Further, Vigliatura did not request that the trial court provide the jury with any cautionary instructions (nor did the trial court provide such instructions). Vigliatura therefore claims that the government's actions constitute plain error.

It is clear that "[a] co-defendant's guilty plea may not be used as substantive evidence of a defendant's guilt. If a co-defendant testifies, however, either the government or the defense may elicit evidence of a guilty plea for the jury to consider in assessing the co-defendant's credibility as a witness. Because of the potential for prejudice, cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical." *United States v. Baez*, 703 F.2d 453, 455 (10th Cir.1983) (citations omitted) (reference to co-defendant's guilty plea was plain error where co-defendant did not testify).

The fact that the district court did not give a cautionary instruction, however, does not automatically constitute plain error. *United States v. King*, 505 F.2d 602, 608 (5th Cir.1974). Instead, this Court must:

> carefully examine all the facts and circumstances of the case in their proper context. The presence or absence of an instruction is an important factor, but it is also essential to consider other factors, such as whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, whether the introduction of the plea was invited by defense counsel, whether an objection was entered or an instruction requested, whether the defendant's failure to object to the testimony could have been the result of tactical considerations, and whether, in light of all the evidence, the failure to give an instruction was harmless beyond a reasonable doubt.

*Id.* (footnotes omitted). Based upon these factors, we hold that the government's elicitation of Nolf's guilty plea does not constitute plain error.

First, the government is permitted to inquire into plea agreements between the witness and the government to establish a witness's credibility under appropriate circumstances. *See, e.g., United States v. Tarantino*, 846 F.2d 1384, 1405 (D.C.Cir. 1988) (failure to instruct not plain error), *cert. denied*, —— U.S. ——, 109 S.Ct. 174, 102 L.Ed.2d 143 (1988); *United States v. Edwards*, 716 F.2d 822, 825 (11th Cir.1983) (rehabilitation on cross-examination), *cert. denied*, 481 U.S. 1019, 107 S.Ct. 1899, 95 L.Ed.2d 506 (1987). Second, it does not appear from the record that the government improperly emphasized or attempted

to use Nolf's testimony as substantive testimony of Vigliatura guilt. Third, Vigliatura did not object to Nolf's testimony and did not request a cautionary instruction. Fourth, Vigliatura specifically states that his failure to object is not based on tactical considerations. Appellant's Brief at 8. Finally, the evidence against Vigliatura is great.

Thus, despite the absence of a cautionary instruction, we conclude that the combined effect of these other factors establishes that the introduction of Nolf's guilty plea does not constitute plain error. *United States v. Chilcote*, 724 F.2d 1498, 1503–04 (11th Cir.1984), *cert. denied*, 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984).

### B. *Nolf's Lie Detector Test*

■ Vigliatura claims that the government improperly elicited from Nolf on direct examination that Nolf had taken a polygraph test during his employment with Brown trucking company. Vigliatura's claim is based on the following interchange between the prosecutor and Nolf:

Q: Well, directing your attention to the morning of the 11th of March, did you have—were you interviewed by anybody who wasn't law enforcement?

A: Okay. I know what happened now. On the 11th of March in the morning I went in and then I went and had a lie detector test done.

Q: That was just a private one, right, by Brown?

A: Yes. It was by Brown Transport.

Q: Now, after that happened, did they send you home?

A: I don't recall what happened right after that. Yes, I believe they did.

R3–41. The government made one reference to the polygraph test during closing argument.[1] Vigliatura's counsel made a number of references to Nolf's polygraph test during cross-examination. R3–104,

106–09. Nolf did not directly state whether or not he passed the polygraph examination and his testimony is inconclusory. The record does not contain any reference to the examination's actual results.

Vigliatura did not object to Nolf's testimony and did not request a cautionary instruction. He claims that the government introduced Nolf's testimony regarding the polygraph test improperly to bolster Nolf's credibility to Vigliatura's detriment. Vigliatura's theory is that Nolf *failed* the polygraph examination thus *strengthening* his credibility as a government witness. The government contends that if Nolf failed the polygraph examination, this fact might *diminish* Nolf's credibility rather than strengthen it.

It is clear that the *results* of polygraph examinations are inadmissible evidence in this Circuit. *See, e.g., United States v. Beck*, 729 F.2d 1329, 1332 (11th Cir.1984) (results of defendant's polygraph test inadmissible), *cert. denied*, 469 U.S. 981, 105 S.Ct. 383, 83 L.Ed.2d 318 (1984); *United States v. Clark*, 598 F.2d 994, 995 (5th Cir.1979) (same), *reh'g granted*, 608 F.2d 238 (1979) (en banc), *reinstated*, 622 F.2d 917 (1980), *cert. denied*, 449 U.S. 1128, 101 S.Ct. 949, 67 L.Ed.2d 116 (1981). Further, a witness's or defendant's willingness to submit to a polygraph examination is inadmissible to prevent the improper bolstering of credibility. *United States v. Russo*, 796 F.2d 1443, 1452–53 (11th Cir.1986) (witness's statement of willingness to take lie detector test inadmissible). This Court has also overturned convictions based on references to polygraph examinations contained in government witnesses' plea bargain documents. *United States v. Hilton*, 772 F.2d 783 (11th Cir.1985) (prejudice to defendant arises because jury might improperly infer that plea agreement assures government witnesses' honesty).

■ Admission of polygraph evidence, although impermissible, is remediable. For

---

1. The prosecutor stated: "Now, you also heard the testimony of Mr. Nolf that he was called back to Brown Transportation Corporation and he was interviewed and also they gave him a lie detector test. What did he tell you next. He said he reported back to Jamie Vigliatura and his girlfriend Kathy Nirosky and wanted to know is everything okay, did they believe you, is it cool, and testifies saying, yes, so far I think they believed me." SR1–13. The prosecutor made no further reference to the test.

instance, a trial court's cautionary instruction to the jury will remedy the introduction of polygraph evidence. *United States v. Holman,* 680 F.2d 1340, 1351–52 (11th Cir.1982). In *Holman,* a government witness impermissible stated that he took polygraph test pursuant to a plea bargaining agreement. This Court held that the trial judge's cautionary instructions to the jury to disregard the witness's statement remedied the error. *Id.* at 1352.

In the instant case, of course, Vigliatura did not request and the district court did not give cautionary instructions. Thus, the standard of review is whether Nolf's and the prosecutor's reference to the employer-administered polygraph examination adversely affected Vigliatura's substantial rights. *Hilton,* 772 F.2d at 786. Appellant's argument that Nolf's statement that he was sent home following the test implies that Nolf failed the test is pure speculation. Jurors might just as readily imply that being sent home inferred that Brown had no reason to have Nolf arrested.[2] It is obvious also that Nolf was feeling good about being sent home after the test. *See* n. 1.

■ We conclude that although the admission of evidence relating to Nolf's employer-administered polygraph examination was improper, Vigliatura's substantial rights have not been prejudiced. First, it is mere speculation that Nolf's and the government's limited references to the employer-administered polygraph bolstered Nolf's credibility. Second, the evidence of Vigliatura's knowing and willful participation in the theft of the televisions and cabinets was established by overwhelming evidence through the testimony of a number of witnesses other than Nolf. Finally, the fact that Vigliatura neither objected nor requested a cautionary instruction and made direct reference to Nolf's polygraph examination during cross-examination indicates that Nolf's defense attorney concluded that the testimony was not prejudicial.

We therefore conclude based on our review of the record that the prosecutor's references to Nolf's polygraph test were harmless beyond a reasonable doubt.

### C. *Vigliatura's Prior Convictions and Arrests*

■ On direct examination, Vigliatura's counsel inquired about his past convictions *and charges.* R4–25–26. Vigliatura admitted to four felony convictions,[3] and a probation violation. He also claimed that Nolf set him up for a recent arrest for possession of and trafficking in cocaine. Vigliatura twice affirmed that he had no other convictions or *charges* brought against him.

During Vigliatura's cross-examination, the prosecutor questioned him extensively about his prior criminal record. The prosecutor inquired about the factual details underlying his drug convictions and Nolf's involvement in the two burglary convictions. Vigliatura also admitted that he was convicted of the recent cocaine trafficking charge. In addition, the prosecutor cross-examined Vigliatura about his recent arrest for conspiracy to commit burglary, a charge which did not result in a conviction. Vigliatura's counsel made no objections.

Because Vigliatura did not object to the admission of his prior convictions and arrests, we must review the errors under the plain error standard. Plain error consists of error which "when examined in the context of the entire case, is so obvious that failure to notice it would affect the fairness, integrity, and public reputation of judicial proceedings." *United States v. Russell,* 703 F.2d 1243, 1248 (11th Cir. 1983); *see Chilcote,* 724 F.2d at 1502 n. 3.

Once a criminal defendant chooses to testify, "he places his credibility in issue as does any witness." *United States v. Lollar,* 606 F.2d 587, 588 (5th Cir.1979). Under Federal Rule of Evidence 609, a defendant's credibility is subject to impeachment

---

**2.** Just prior to the polygraph, Nolf had been interviewed by a detective.

**3.** These included a 1976 conviction for possession of marijuana and angel dust, a 1978 convic-

tion for attempted burglary, a second 1978 conviction for attempted burglary, and a 1982 conviction for aggravated assault with a motor vehicle.

through evidence of his prior convictions. The mere existence of an arrest is not admissible. *United States v. Labarbera,* 581 F.2d 107, 108–09 (5th Cir.1978). Vigliatura admits that on direct examination his trial counsel "opened the door" by questioning him about prior *charges* and convictions (some of which were clearly inadmissible under Rule 609). He claims, however, that the prosecutor's cross-examination went beyond permissible bounds.

Vigliatura primarily relies upon *United States v. Tumblin,* 551 F.2d 1001 (5th Cir. 1977), where this Court reversed a defendant's conviction because the prosecutor upset the delicate balance between the permissible and impermissible uses of prior conviction evidence. Over the defendant's repeated objections, the prosecutor exceeded a reasonable scope of questioning during cross-examination by not just reaffirming the defendant's prior convictions but by emphasizing:

> that defendant had been released from confinement for one conviction for only a few weeks when he was again arrested for a criminal violation, that he had held no regular job in the last couple of years because he had been serving so much time in jail on previous convictions, that indeed for many years prison had been the only home the defendant had known.

*Id.* at 1004. During closing argument, the prosecutor again reemphasized the theme that the defendant "was a man who had spent most of his young life committing and serving time for crimes, rather than being gainfully employed." *Id.* The Court held that the prosecutor's actions constituted reversible error. *Id.* at 1005.

We do not find the *Tumblin* imbalance in this case. First, our review of the trial transcript reveals that Vigliatura's trial counsel "opened the door" on direct examination. Vigliatura's direct examination testimony, which delved into both his past convictions and *charges,* broadened the permissible scope of the prosecutor's cross-examination. Further, Vigliatura's testimony regarding his recent arrest on drug charges and his repeated reaffirmance that there were no other past or current "convictions or charges" against him, opened him up to impeachment by the prosecutor regarding such convictions or charges. Second, although the prosecutor treaded a fine line in this case by emphasizing the factual basis of Vigliatura's past convictions and further eliciting the fact that Vigliatura had been arrested for conspiracy to commit burglary, a thorough examination of the entire record establishes that Vigliatura received a fair trial and the "fairness, integrity, and public reputation of judicial proceedings" though blemished have not been disfigured. Based on the plain error standard, we conclude that the prosecutor's inquiry into Vigliatura prior arrest, although improper, does not amount to reversible error.

AFFIRMED.