**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Charles GATES, Defendant–Appellant.**

No. 92–9284.

United States Court of Appeals, Eleventh Circuit.

Dec. 30, 1993.

Howard Jay Manchel, Manchel Johnson & Wiggins, Atlanta, GA, for defendant-appellant.

F. Gentry Shellnut, Bryan J. Farrell, Asst. U.S. Attys., Atlanta, GA, for plaintiff-appellee.

Before ANDERSON and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

Charles Gates was convicted of three counts of armed bank robbery and three counts of use of a firearm in connection with the robberies. He was acquitted on eight counts of armed robbery.

Gates was tried jointly with co-defendant Moses James, who was convicted of the same three robberies. The modus operandi of the three robberies was the same. One or two participants were "floor men" who remained in the lobby area of the bank displaying weapons and directing bank employees and customers. A "counter man" would leap over the counter and gather up money. Testimony tended to identify James as the counter man in the three robberies of which they were convicted and Gates as a floor man.

I.   Motion relating to competency of government witness Hooper.

Before trial Gates filed a motion asking that government witness Gary Hooper be ordered to undergo psychiatric examination before trial. It set out Hooper's grand jury testimony describing how, at the request of co-defendant and James, he engaged in a "staged theft" of an automobile later used by James in the first (October 30) robbery, for which he was paid $1,000. James had earlier told Hooper that "he had a partner named Charles that was going to help him." After being excused and offered an opportunity to correct his testimony, Hooper told the grand jury that Gates went with him and James to buy gloves and a ski mask, that they cased banks to rob, and that Gates and James

selected a bank and robbed it with Hooper at the wheel of the getaway car.

The Gates motion alleged that in October 1989, approximately 10 days before the first bank robbery, Hooper had been hospitalized at a Georgia state mental health institution for two days. The records of the institution indicated that Hooper had been hospitalized for mental illness in 1980; that he was a daily user of crack cocaine; he was hallucinating, suicidal and homicidal; his wife described him as hallucinating and paranoid. The records referred to psychological testing as indicating a conscious deception by Hooper to look good; that he typically had severe underlying guilt that he projected unto others, and that he brooded about real or imaginary wrongs. This institutionalization was approximately ten days before the first bank robbery.

We cannot find a record entry stating that the motion was denied, but all agree that it was not granted.

■   There are inherent problems in allowing psychiatric examination of a witness, such as invasion of privacy, limiting availability of witnesses, chilling testimony, and battles of experts over competency. Rule 601 allows one not mentally competent to testify, and it assumes that jurors are capable of evaluating a witness's testimony in light of the fact that he is not mentally competent. *Cf.* Advisory Committee's note to Rule 601. Notwithstanding Rule 601, a court has the power to rule that a witness is incapable of testifying, and in an appropriate case it has the duty to hold a hearing to determine that issue. *U.S. v. Gutman,* 725 F.2d 417, 420 (7th Cir.) *cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 183 (1984).

■   In this case Hooper was cross-examined vigorously, searchingly, and over a wide range for almost 50 pages of transcript. He was examined about details of the first robbery that he described in his trial testimony but had not mentioned before the grand jury. The medical records of the institution in which he had been placed were put into evidence, and he was examined about their contents. The institutionalization in question had occurred more than two years before the

trial. The trial judge had before him the grand jury testimony and the medical records. Considering all the circumstances we cannot say that the judge erred in not granting an examination and in not conducting a hearing on the issue of competency.

■ The failure to have an examination of Hooper did not violate the Confrontation Clause. Confrontation is primarily a trial right directed at cross-examination; it is not a constitutionally compelled rule of pre-trial discovery. See *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (plurality opinion). As we have noted, the institutional records of Hooper were available to the defense and were admitted into evidence and his grand jury testimony was fully explored on cross-examination.

## II. F.R.Evid. 609

■ The court did not violate Rule 609 by admitting evidence that Gates had a drug conviction more than ten years old. On direct examination Gates was asked to describe the felony conviction he had before the first bank robbery. He described a single conviction. On cross the government was permitted to ask questions about two other convictions more than ten years old to establish that Gates's answer describing a single conviction was false. *U.S. v. Vigliatura*, 878 F.2d 1346 (11th Cir.1989).

## III. Photospreads

The court did not abuse its discretion in holding that photospreads were not suggestive.

## IV. Motion for new trial

Approximately six months after the trial Gates moved for a new trial based in part upon an affidavit by co-defendant James.

The affidavit is set out in the margin.[1] The three robberies described by James were those for which Gates was convicted. At trial James had stood on his constitutional right to remain silent and had not testified. Gates had testified and denied involvement in the robberies. His defense was that he did not rob the bank, did not know who did, and did not know who might have been James's partners.

■ Five criteria apply to a motion for new trial based on newly-discovered evidence:

(1) the evidence must be discovered following trial; (2) the movant must show due diligence to discover the evidence; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material to issues before the court; and (5) the evidence must be of such a nature that a new trial would probably produce a new result.

*U.S. v. Hall*, 854 F.2d 1269, 1271 (11th Cir. 1988).

■ The government says that Gates failed to satisfy elements (1), (2) and (5). On element (1), Gates's motion tends to show that he did not discover until after trial that James would exculpate him and name others as the co-participants. The affidavit purports to have been made on a date a few days after Gates was sentenced. The government has not pointed to any evidence in the record indicating that before or during trial Gates knew or had access to knowledge that James would exculpate him and describe the robberies as involving other co-participants.

With respect to element (2), due diligence, the government suggests that Gates lacked diligence because he did not ask the government to grant immunity to James and re-

1. I, Moses James, swear under oath of perjury that Charles Gates, was not my accomplish [sic] in the bank robberis [sic] at the following banks:
   1) First Union Bank, Franklin Rd., Cobb County.
   2) C & S Union City, Ga., Londonderry Dr. Fulton County.
   3) C & S Bank Fulton Industrial Blvd.
   My accomplish [sic] in these bank robberies who served as floor-man was Orin Jackson;

Sammy Carroll supplied the guns; Willie Carroll stole cars.
In the 10–30–89, bank robbery ___ McNa [illegible] was the floor-man.
   I gave this statement freely and voluntarily, knowing that my right to a new trial may be affected if I win my appeal.
   I am willing to give a full accounting of the details of these robberies in the presence of the United States Attorney and the F.B.I.
   This the 12th day of November, 1991.

quire him to testify. But this presupposes that Gates knew that James would give exculpatory testimony. Moreover, it is contrary to common sense. James was charged with ten bank robberies and ten firearms violations. A request that he be granted immunity to testify in favor of Gates would have been met with incredulous laughter. Nor was Gates lacking in diligence because, at the joint trial in which James was exercising his constitutional right not to testify, he did not call James as a witness.

The government also contends that Gates lacked diligence because, in a pre-trial motion for severance, he did not state as a ground that James would give exculpatory testimony. Again, this presupposes that Gates knew that James would exculpate him and name others.

Additionally, Gates attempted unsuccessfully to air at trial the precise issue raised by James's affidavit, i.e., whether he was James's partner and the identity of others as possibly the true partners. Gates attempted to introduce evidence arguably tending to show that in other robberies James had used persons other than Gates as his "floor men," arguably leading to an inference that some one or more of these prior participants might have been James's co-actors in the robberies for which Gates was charged. The court would not let Gates go into these matters, and Gates moved for a mistrial. We do not suggest that the court erred. Rather, the significance of these events is that Gates attempted to defend on the precise issue presented by James's affidavit, i.e., that Gates was not James's partner and the identity of others who were.

As to element (5), James had multiple felony convictions and a jury might find him to be not a credible witness. On the other hand, exculpation of Gates and the identification of others as participants does not on its face show any benefit to James, whose conviction is final and has been affirmed on appeal, and, if the affidavit is untrue, exposes James to the possibility of a new charge for giving a false affidavit. At trial Gates testified to adversarial relations between him and James—that after the first robbery James threatened to kill him if he ever told about it.

We are aware that post-trial exculpatory statements given by a convicted co-defendant must be viewed with care. We do not suggest or hint that Gates's motion should be granted. But we do hold that it could not be denied without a hearing to explore further and determine whether it has merit.

## V.

All other issues raised by Gates have no merit and require no discussion.

## Conclusion

The order denying the motion for new trial is VACATED and the case is REMANDED for a hearing on that motion. In all other respects the judgment of the district court is AFFIRMED.