[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 6, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13423
Non-Argument Calendar

_____

D. C. Docket No. 06-20039-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEXIS MARRERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 6, 2007)**

Before ANDERSON, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Alexis Marrero appeals his conviction for failure to surrender for service of

sentence, a violation of 18 U.S.C. § 3146(a)(2). On appeal, Marrero argues that the district judge erroneously failed to recuse herself from trial and evinced an improper bias towards him, that the court's decision to admit evidence of Marrero's prior felony convictions to impeach his testimony constituted reversible error, and that the court erred by not allowing Marrero to present his theory of defense.

## I. Recusal

Marrero argues that the district judge should have recused herself from his trial for failing to surrender to serve his sentence because she had a personal bias against him. He also argues that by allowing the jury to review a transcript of the December 14, 2005, hearing at which he was sentenced for the underlying felony, the district judge made herself a material witness in this case because the transcript contained statements made by the judge at that hearing that the jury could perceive as antagonistic toward him.

Ordinarily, we review a judge's decision not to recuse herself for an abuse of discretion. United States v. Berger, 375 F.3d 1223, 1227 (11th Cir. 2004). However, where a defendant failed to seek recusal of the district court in the proceedings below, we review his challenge for plain error. Id. Plain error is: "(1) error, (2) that is plain and (3) that affects substantial rights. If all three conditions

are met, we may then exercise our discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003) (citations and internal quotations omitted). "A substantial right is affected if the appealing party can show that there is a reasonable probability that there would have been a different result had there been no error." United States v. Bennett, 472 F.3d 825, 831-32 (11th Cir. 2006).

A judge "shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or "[w]here [s]he has a personal bias or prejudice concerning a party," 28 U.S.C. § 455(b)(1). We determine whether a judge should recuse herself, based on the appearance of impropriety, under § 455(a), by "whether 'an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.'" Berger, 375 F.3d at 1227 (internal citation omitted). We have stated that "a judge should recuse [her]self under § 455(b) when any of the specific circumstances set forth in that subsection exist, which show the fact of partiality," and where such circumstances exist, "[r]ecusal is mandatory, because 'the potential for conflicts of interest are readily apparent.'" United States v. Patti, 337 F.3d 1317, 1321 (11th

3

Cir. 2003). A defendant may not waive a ground for disqualification enumerated in subsection (b), but "[w]here the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." Id. at 1322 (citing 28 U.S.C. § 455(e)).

"Bias sufficient to disqualify a judge under section 455(a) and section 455(b)(1) must stem from extrajudicial sources, unless the judge's acts demonstrate such pervasive bias and prejudice that it unfairly prejudices one of the parties." United States v. Bailey, 175 F.3d 966, 968 (11th Cir. 1999) (internal quotation omitted). Applying the "extrajudicial source" standard, the Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," nor do "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases." Liteky v. United States, 510 U.S. 540, 555-56, 114 S.Ct. 1147, 1157, 127 L.Ed.2d. 474 (1994). The Court stated that judicial remarks "may" support a bias or partiality challenge "if they reveal an opinion that derives from an extrajudicial source; and will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Id. However, "[n]ot establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even

4

anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." Id.

Because Marrero did not expressly ask that the court recuse herself, after a lengthy discussion of the court's potential apparent bias and Marrero's statement that he would let the court preside, to the extent that he now relies on 28 U.S.C. § 455(a), that argument is waived. See Patti, 337 F.3d at 1321-22.

Actual bias, raised under one of the circumstances listed in subsection (b), cannot be waived by a defendant. Therefore, to the extent that Marrero relies on § 455(b)(1), we review the district court's decision for plain error. Prior to trial Marrero raised the specter of personal bias on the basis that the same judge presiding over his trial for failure to surrender for service of sentence, at an earlier proceeding, set the sentence and assigned the date by which he was to surrender. On appeal, Marrero adds an additional reason why recusal was appropriate, notably that in the earlier proceeding, the court had made critical statements, reflective of her personal animosity towards him. Based on the Supreme Court's decision in Liteky, the trial court did not commit any error, much less plain error, by presiding over Marrero's trial. The fact that the district judge presided over Marrero's earlier proceeding is an insufficient ground to require her to recuse herself from a later jury trial. In addition, her remarks, captured on a transcript from the earlier

proceeding, reflected an expressed impatience and annoyance with his inability to follow court orders, which she derived from judicial matters and not extra-judicial sources. According to the Supreme Court, such remarks are not indicative of personal bias. Therefore, the district court did not commit any error by failing to recuse herself because of personal bias.

Marrero also raises the issue that the district court should have recused herself because she became a material witness in the trial when the transcript of the sentencing hearing was admitted into evidence and disparaging comments made by the judge about Marrero were published to the jury. Because, Marrero did not raise any argument at trial that admission of the transcript made the court a material witness in the proceeding requiring the judge to recuse herself, we review the district court's failure to recuse herself under the plain error standard. Berger, 375 F.3d at 1227.

A judge must disqualify herself from the proceeding if she is "to the judge's knowledge likely to be a material witness in the proceeding." 28 U.S.C. § 455(b)(5)(iv). We have recognized that the "doctrine of invited error is implicated when a party induces or invites the district court into making an error," and "[w]here invited error exists, it precludes a court from invoking the plain error rule and reversing." United States v. Love, 449 F.3d 1154, 1157 (11th Cir. 2006).

6

We have held that a defendant could not later challenge the admission of evidence to which he had stipulated its admission because "a criminal defendant may not make an affirmative, apparently strategic decision at trial and then complain on appeal that the result of that decision constitutes reversible error." United States v. Jernigan, 341 F.3d 1273, 1290 (11th Cir. 2003).

Marrero invited any error that resulted from the district judge presiding over his trial as a result of his stipulation to the admission of the transcript. Marrero stipulated to its admission in its entirety, without asking for redactions, and he read to the jury and propagated his defense entirely on the portions of the transcript that he now alleges were prejudicial to him. We therefore hold that Marrero invited any error that he now complains about with regard to the transcript and the invitation precludes him from invoking the plain error rule.

Marrero also alleges for the first time on appeal that the combination of the judge's statements in the transcript and the government's references to the court's and prosecutor's earlier involvement with Marrero turned the judge and prosecutor into credibility witnesses that were not subject to confrontation, in violation of Crawford v. United States, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In Crawford, the Supreme Court held that out-of-court testimonial statements are barred by the Confrontation Clause unless the witnesses are available and the

7

defendant had the prior opportunity for cross-examination. Id. at 59, 124 S.Ct. at 1369. A statement is testimonial if it is "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. at 51, 124 S.Ct. at 1364. The statements in the transcript about Marrero's reliability were not at all offered by the government, or for the purpose of proving their truth. Because Marrero was the party that introduced the statements that he now claims were offensive, he cannot now claim that the statements violated his rights to confrontation.

## II. Evidence of prior convictions

At the onset, we dispose of Marrero argument that he was "compelled to testify and answer to the damaging transcript" admitted at trial as being without merit. A criminal defendant is "not obliged to testify[,] [a]nd a defendant who chooses to present a defense runs a substantial risk of bolstering the Government's case." United States v. Williams, 390 F.3d 1319, 1325 (11th Cir. 2004). Marrero had no obligation to rebut the government's evidence at trial, therefore, he was not compelled to testify.

Marrero argues that the district court should not have allowed the government to cross-examine him about his prior convictions. Evidentiary rulings are reviewed for an abuse of discretion. United States v. Burston, 159 F.3d 1328, 1334 n.11 (11th Cir 1998).

8

"Once a criminal defendant chooses to testify, 'he places his credibility in issue as does any witness.'" United States v. Vigliatura, 878 F.2d 1346, 1350 (11th Cir. 1989). The admissibility of prior convictions to impeach a testifying defendant is governed by Federal Rule of Evidence 609(a)(1), which provides that evidence that the accused has been convicted of a felony, for the purposes of attacking his character for truthfulness, "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed.R.Evid. 609(a)(1).

The district court did not err by allowing the government to impeach Marrero with his prior convictions. Marrero "opened the door" to a full discussion of his past convictions on direct examination when he testified that he was 37 years old and had been in prison since he was 25 years old, and because of that had only seen his 10 year-old daughter for a total of 5 1/2 months. See Vigliatura, 878 F.3d at 1351. Also during direct examination, Marrero discussed his prior convictions and alleged that he had not been treated fairly by the criminal justice system. After Marrero had mentioned his criminal history, the government then sought to introduce his prior convictions only to note the number of convictions, the case number of each conviction, the charges of each conviction, and the aliases Marrero used in prior convictions. The court did not abuse its discretion by allowing the

9

government to question Marrero to a limited degree about his prior convictions when he "opened the door" by discussing his criminal past.

## III. Theory of defense

Marrero argues that the court improperly forbid him from presenting to the jury his theory of defense, that he lacked the requisite mens rea to have knowingly failed to surrender to serve his sentence. Marrero informed the court in a pretrial proffer that he intended to defend his charge on the ground that he could not have "knowingly" committed the offense because he was never told that failure to surrender was a separate, punishable crime and was instead only presented with incentives for promptly reporting to serve his sentence. Before trial began, the court informed Marrero that he would not be allowed to present his intended defense because ignorance of the law is not a valid defense. The court sustained objections by the government both during opening statements and closing arguments when Marrero's counsel presented his defense, and instructed the jury that ignorance of the law is not a defense to a criminal act.

The conduct of a district judge during trial is reviewed for abuse of discretion, and we will only find reversible error where judicial conduct "demonstrate[s] such pervasive bias and unfairness that [it] prejudice[s] one of the parties in the case." United States v. Verbitskaya, 406 F.3d 1324, 1337 (11th Cir.

10

2005), cert. denied, 126 S.Ct. 1095 (2006) (internal quotation omitted). A district court has "broad discretion over closing argument and will be reversed only if counsel is prevented from making all legal arguments supported by the facts." United States v. Dulcio, 441 F.3d 1269, 1276 (11th Cir. 2006) (holding that district court properly restricted argument where defendant had "no good faith basis" to argue unsupported and irrelevant inferences). Counsel for the defendant is entitled to argue points of law during closing and apply that law to the facts of the case; however, in arguing points of law, counsel is "confined to law that is included in the judge's charge to the jury." United States v. Hall, 77 F.3d 398, 400-01 (11th Cir. 1996) (reversing defendant's conviction and ordering new trial where the district court prohibited defense counsel from applying "the accepted definition of reasonable doubt – a term which was included in the judge's charge to the jury" to the facts of the case).

Because the scope of permissible legal arguments during closing arguments is controlled by the jury instructions, we need to consider whether the district court properly instructed the jury of the definition of "knowingly." It is well-settled that district courts "have broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts." United States v. Kennard, 472 F.3d 851, 854 (11th Cir. 2006).

11

At issue in this case is the bail jumping statute that punishes "[w]hoever, having been released under this chapter knowingly fails to surrender for service of sentence pursuant to court order." 18 U.S.C. § 3146(a)(2). We have not yet defined the mental state requirement of that statute. But see United States v. Grant, 256 F.3d 1146, 1151 (11th Cir. 2001) (upholding conviction where evidence unequivocally proved that defendant knew there was a warrant for his arrest and used an alias to avoid arrest).

Legislative history from the Bail Reform Act indicates that Congress, in 18 U.S.C. § 3146, "by use of the term 'knowingly' as a mental state requirement . . . intend[ed] to perpetuate the concept of 'willfully' which appears in the [former] bail jumping statute [18 U.S.C. § 3150 (amended)]. S. Rep. No. 98-225, at 31-32 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3214-15 (attached). Congress recognized that "[t]he word 'willfully' as used in [the former statute] has been interpreted to mean that the omission of failing to appear was 'voluntary . . . and with the purpose of violating the law, and not by mistake, accident, or in good faith." Id. Congress stated that the term "knowingly," in the new bail jumping statute, 18 U.S.C. § 3146, was to be defined as interpreted in United States v. DePugh, 434 F.2d 548, 551-52 (8th Cir. 1970), and United States v. Hall, 346 F.2d 875 (2d Cir. 1965). S. Rep. No. 98-225, at 31-32. In Hall, the Second Circuit

12

ruled that "willful," as defined in the bail jumping statute, "means no more than that the person charged with the duty knows what he is doing.  It does not mean that, in addition, he must suppose that he is breaking the law." Hall, 346 F.2d at 879-80.  This interpretation is consistent with "[t]he general rule that ignorance of the law or a mistake of the law is no defense to criminal prosecution . . . deeply rooted in the American legal system." Cheek v. United States, 498 U.S. 192, 199, 111 S.Ct. 604, 609, 112 L.Ed.2d 617 (1991).

Throughout the course of the trial, Marrero sought to argue a definition of "knowingly" that was not accepted by the court.  The district court's decision to refuse Marrero's intended defense is consistent with Congress' interpretation of "knowingly."  In an ex parte proffer before trial, Marrero explained to the court that his intended defense was that he did not act knowingly because he was never informed that failure to surrender for sentencing was an additional offense.  Before trial commenced, the court informed Marrero that ignorance of the law is not a valid defense and that his counsel would be reprimanded if he violated the law by making that argument.  Marrero then proceeded to continually reiterate his invalid defense and the court acted exactly as it forewarned: it informed the jury that Marrero was misrepresenting the law. Thus, the court did not abuse its discretion by prohibiting Marrero from presenting his invalid defense to the jury.

13

For the foregoing reasons, Marrero's conviction is,

**AFFIRMED.**[1]

---

[1] Marrero's request for oral argument is denied.