[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-15178
Non-Argument Calendar
_____

D.C. Docket No. 8:09-cr-00251-JSM-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEMETRIUM SILAS SHAW,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 13, 2012)

Before HULL, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Demetrium Silas Shaw appeals from his convictions and 240-month total

sentence for conspiring to possess with intent to distribute 50 grams or more of

crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(iii) and 846, and possessing with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii).  On appeal, Shaw argues that the district court erred in denying his motion to suppress evidence seized as a result of a search of his property because the affidavit underlying the search warrant allegedly contained material misrepresentations and omissions.  He next argues that the court erred in denying his motion for a new trial based on newly discovered evidence that one of the witnesses against him had made false statements during his testimony.  Finally, Shaw argues that he should have been sentenced under the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372 (2010), because he was sentenced after the Act's effective date.

I.

"Review of a district court's denial of a motion to suppress is a mixed question of law and fact."  United States v. Delancy, 502 F.3d 1297, 1304 (11th Cir. 2007).  We review the district court's factual findings for clear error and its interpretation and application of the law de novo, construing all facts in the light most favorable to the prevailing party.  Id.

For a search warrant to be valid, it must be supported by probable cause. U.S. Const. amend. IV.  "Probable cause to support a search warrant exists when

2

the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999).  Accordingly, the search warrant affidavit must "state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002) (quotation omitted). "[T]he affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." Id.

Search warrant affidavits are presumptively valid. Franks v. Delaware, 438 U.S. 154, 171, 98 S. Ct. 2674, 2684 (1978).  However, a search warrant may be voided and the fruits of the search excluded if the warrant affidavit contained certain misrepresentations or omissions. Id. at 155-56, 98 S. Ct. at 2676.  A defendant must show that (1) "the alleged misrepresentations or omissions were knowingly or recklessly made" and (2) "the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for issuance of the warrants." United States v. Novaton, 271 F.3d 968, 986-87 (11th Cir. 2001).

3

In this case, the record shows that undercover Deputies William Sims and Demetrius Dixon purchased crack cocaine from Eddie Light on March 11, 13, 18, and 31, 2009.  During the March 11 sale, the deputies accompanied Light to Shaw's residence, where Light appeared to enter the side of Shaw's house and then returned with crack cocaine to sell to the deputies.  During the March 13 buy, the deputies observed Light walk in the direction of Shaw's residence and then return with crack cocaine.  For the March 18 buy, deputies actually saw Light enter Shaw's house and return with drugs.  On March 31, the deputies purchased a larger quantity of crack cocaine from Light, although this transaction did not occur at Shaw's residence, nor did the deputies see Light come from Shaw's residence.

On April 2, 2009, Deputy Sims obtained a search warrant for Shaw's residence and an arrest warrant for Shaw.  In his affidavit for a warrant, Deputy Sims said, inter alia, that he had witnessed Light actually enter Shaw's residence during the March 11 and 18 sales.  Deputy Sims omitted all references to the March 31 drug buy, which had not occurred at Shaw's residence.  The search of Shaw's residence and vehicles turned up 405.2 grams of crack cocaine, 76 grams of cocaine powder, and 414 grams of marijuana, as well as scales, handguns, and ammunition.

4

During the hearing to suppress this evidence, Deputy Sims testified that he had not actually witnessed Light enter Shaw's house on March 11.  Rather, Deputy Sims had seen Light walk up the driveway towards the side of the house into an area enclosed by a six-foot fence and containing a wheelchair ramp into Shaw's bedroom, then return shortly with the crack cocaine. Shaw argues that this misstatement, combined with the failure to mention the March 31 drug buy, renders the warrant void, and thus the fruits of the warrant should have been excluded.

Deputy Sims admitted that it "was a poor choice of words" to say that Light had actually entered Shaw's house.  However, there is no evidence that Deputy Sims intended to mislead the magistrate judge with a "deliberate falsehood." Franks, 438 U.S. at 171, 98 S. Ct. at 2684.  Even if the warrant contained exactly what Deputy Sims saw, there still would have been probable cause to search Shaw's residence given the reasonable inference that Light indeed had gone into the house on March 11, as well as the fact that the deputies had actually seen Light enter Shaw's residence during the March 18 buy.

Shaw also claims that omitting the March 31 drug buy rendered the warrant void.  That is, he argues that even though the deputies had no direct evidence that the last drug purchase involved Shaw's residence in any way, Deputy Sims still

5

should have included it in his affidavit for a warrant to search Shaw's residence. Shaw argues that the March 31 buy tended to show that Light was getting cocaine from a source other than Shaw's residence. However, the existence of this final purchase did not diminish the probable cause obtained during the previous purchases where Light had been seen entering Shaw's property and returning with crack cocaine. The March 31 buy did not produce evidence that Light had been obtaining the cocaine from a source other than Shaw. In other words, Shaw cannot show that including the March 31 purchase in the affidavit would have destroyed the probable cause from the previous cocaine purchases at Shaw's property. Novaton, 271 F.3d at 986-87.

Because the affidavit supporting the search warrant of Shaw's property did not contain misrepresentations or omissions that were knowingly or recklessly made, and because there was probable cause that contraband would be found at Shaw's property, the district court did not err in denying Shaw's motion to suppress evidence seized during the execution of that warrant.

## II.

We review a district court's denial of an evidentiary hearing for an abuse of discretion. United States v. Massey, 89 F.3d 1433, 1443 (11th Cir. 1996).

6

A district court may grant a defendant's motion for a new trial based on newly discovered evidence if the motion is filed within three years after the verdict and the interest of justice so requires. Fed. R. Crim. P. 33(a), (b)(1). A new trial based on newly discovered evidence is warranted only if (1) the evidence was discovered after trial; (2) the defendant exercised due care to discover the evidence; (3) the evidence was not simply cumulative or impeaching; (4) the evidence was material; and (5) the evidence's nature was such that a new trial would probably produce a different result. Weiss v. United States, 122 F.2d 675, 691 (5th Cir. 1941). "The failure to satisfy any one of these elements is fatal to a motion for a new trial." United States v. Lee, 68 F.3d 1267, 1274 (11th Cir. 1995) (quotation omitted). "[T]he defendant bears the burden of justifying a new trial." United States v. Campa, 459 F.3d 1121, 1151 (11th Cir. 2006) (quotation omitted).

At Shaw's trial, James Oner testified that he used to regularly buy cocaine from Corey Dunn, who said that the drugs were provided by Shaw. After Shaw was convicted, he moved for a new trial after discovering that Oner, in a call from jail, allegedly said that he did not know Shaw and planned to testify against him to reduce Oner's own sentence. The district court denied this motion without a hearing.

7

A defendant is not entitled to an evidentiary hearing on a Fed. R. Crim. P. 33 motion for a new trial if "the acumen gained by a trial judge over the course of the proceedings [made him] well qualified to rule on the [motion] without a hearing." United States v. Schlei, 122 F.3d 944, 994 (11th Cir. 1997) (citation omitted). In United States v. Gates, 10 F.3d 765 (11th Cir. 1993), we held that the district court erred in denying the defendant a hearing on his motion for a new trial where his co-defendant made post-trial exculpatory statements. Id. at 767-68. In United States v. Culliver, 17 F.3d 349 (11th Cir. 1994), we held that the district court erred in granting the defendant's motion for a new trial without first holding an evidentiary hearing as requested by the government, where that motion was based on newly discovered evidence of an apparent witness recantation. Id. at 350-51. Finally, in United States v. Jernigan, 341 F.3d 1273 (11th Cir. 2003), we held that the district court did not abuse its discretion in denying the defendant's motion for a new trial without first conducting an evidentiary hearing because the district court properly concluded that his claimed newly discovered evidence was unlikely to have generated a different result at trial. Id. at 1287-89.

At most, the evidence proffered by Shaw merely tended to impeach Oner's testimony, which does not rise to the level for a new trial to be granted. United States v. Thompson, 422 F.3d1285, 1294 (11th Cir. 2005). Additionally, other

8

comments by Oner during the telephone call indicated that he actually was familiar with Shaw, as Oner knew Shaw's nickname and knew that he was a paraplegic. Given this evidence, Shaw cannot show that a new trial probably would have produced a different outcome, and the district court properly denied Shaw's motion for a new trial.  Id.

### III.

We review de novo the legal question of whether the FSA applies to defendants who had not been sentenced by the date of the FSA's enactment.  See United States v. Olin Corp., 107 F.3d 1506, 1509 (11th Cir. 1997).

The Supreme Court has recently concluded that "Congress intended the Fair Sentencing Act's more lenient penalties to apply to those offenders whose crimes preceded August 3, 2010, but who are sentenced after that date."  Dorsey v. United States, No. 11-5683, 2012 WL 2344463, slip op. at 11 (U.S. June 21, 2012).

Shaw's crack cocaine offenses occurred in March 2009, but he was not sentenced until October 28, 2010—after the FSA went into effect.  Accordingly, we remand Shaw's case to the district court for re-sentencing consistent with Dorsey.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.[1]

---

[1]        Any pending motion is DENIED.

9